**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                    )
**RICHARD LIVINGSTON,**                    )
                                                    )
        **Plaintiff,**                              )
                                                    )
**v.**                                              )          **C.A. No. 05-CV-11349-RCL**
                                                    )
**MBTA EMPLOYEES**                          )
**CREDIT UNION,**                            )
                                                    )
        **Defendant.**                             )
_____)

## JOINT STATEMENT

Pursuant to the Court's February 28, 2006 Notice of Scheduling Conference and

Additional Matters (the "Notice"), Richard Livingston ("Livingston") and MBTA Employees

Credit Union (the "Credit Union") submit the following Joint Statement:

I.    OBLIGATION TO CONFER

Livingston and counsel for the Credit Union certify that they have met and conferenced,

in person, telephonically and through correspondence for the purposes outlined in the Notice.

II.    AGENDA OF MATTERS TO BE DISCUSSED AT THE SCHEDULING
       CONFERENCE

       A.    Plaintiff's Claims/Issues Presented

              I.    WHETHER, THE PLAINTIFF'S PROTECTION AGAINST
                    DISCRIMINATORY TREATMENT, U.S BANKRUPTCY CODE, TITLE 11,
                    CHAPTER 5, SUB CP. II, s.525 WAS VIOLATED WHEN; THE
                    MASSACHUSETTS BAY TRANSPORTION AUTHORITY (MBTA)
                    EMPLOYEES CREDIT UNION DENIED THE PLAINTIFF ACCESS TO
                    THE BALLOT FOR NOMINATION TO THE MBTA CREDIT UNION
                    BOARD OF DIRECTORS WHEN; THE MBTA EMPLOYEES CREDIT
                    UNION BY-LAWS, ARTICLE IX, SEC. 7, (4) STATES, "A CANDIDATE
                    MAY NOT HAVE DECLARED BANKRUPTCY WITHIN THE PREVIOUS
                    FIVE (5) YEARS" WERE USED AS A GUIDING COMPASS TO DENY THE
                    PLAINTIFF ACCESS TO RUN FOR NOMINATION TO THE MBTA
                    EMPLOYEES CREDIT UNION BOARD OF DIRECTORS.

II.    WHETHER, THE BY-LAWS OF THE MBTA EMPLOYEES CREDIT
UNION HARMED THE PLAINTIFF, BY DENYING THE PLAINTIFF THE
ENJOYMENT OF THE CONGRESSIONAL POLICY AND INTENT OF A
"FRESH START" AFTER FILING BANKRUPTCY PROTECTION FOR A
DEBTOR WHEN; US BANKRUPTCY CODE TITLE 11, CHAPTER 5, SUB
CP. II, s.525 (a) STATES, "…NO PRIVATE EMPLOYER MAY
…DISCRIMINATE AGAINST A PERSON THAT IS OR HAS BEEN A
DEBTOR UNDER TITLE 11, U.S BANKRUPTCY CODE, SOLELY
BECAUSE SUCH PERSON IS OR HAS BEEN A DEBTOR UNDER TITLE
11 CHAPTER 5, SUB CP. II, s.525 (a), BANKRUPTCY ACT".

III.    WHETHER, THE BY-LAWS OF THE MBTA EMPLOYEE CREDIT UNION
ARE IN VIOLATION OF THE CONGRESSIONAL LEGISLATIVE
INTENT/POLICY "NOT TO DISCRIMINATE AGAINST A DEBTOR"
THAT IS OR HAS BEEN A DEBTOR UNDER TITLE 11 OF THE U.S.
BANKRUPTCY CODE.

IV.    WHETHER, THE PLAINTIFF'S PRIVACY RIGHTS WERE VIOLATED BY
UNFAIR BUSINESS PRACTICES IN VIOLATION OF MASSACHUSETTS
CONSUMER PROTECTION ACT, MGL 93A AND FEDERAL TRADE
COMMISSION ACT (FTC), 15 U.S.C., SEC. 45(a)(1) WHEN; THE MBTA
TRASFERRED DATA, RECORDS, FILES, DOCUMENTS, AND
PERSONAL PROPERTY, OF THE PLAINTIFF WITHOUT THE
PLAINTIFFS    NOTIFICATION,    CONSENT,    OR    WRITTEN
AUTHORIZATION.

V.    WHETHER, THE PLAINTIFFS RIGHTS TO FINANCIAL PRIVACY WAS
VIOLATED WHEN; PLAINTIFFS FINANCIAL RECORDS WERE
TRANSFERRED BY MBTA EMPLOYEE CREDIT UNION WITHOUT
WRITTEN AUTHORIZATION, NOTIFICATION OR CONSENT IN
VIOLATION OF FDIC CONSUMER PROTECTION FINANCIAL
INSTITUTIONS REGULATORY AND INTEREST RATE CONTROL ACT
OF 1978, TITLE XI, RIGHT TO FINANCIAL PRIVACY, SECTION 1102 (1-
5) WHICH STATES: "(1) SUCH CUSTOMER HAS AUTHORIZE SUCH
DISCLOSURE IN ACCORDANCE WITH SECTION 1104; (2) SUCH
FINANCIAL RECORDS ARE DISCLOSED IN RESPONSE TO AN
ADMINISTRATIVE SUBPOENA OR SUMMONS WHICH MEETS THE
REQUIREMENTS OF SECTION 1105; (3) SUCH FINANCIAL RECORDS
ARE DISCLOSED IN RESPONSE TO A SEARCH WARRANT WHICH
MEETS THE REQUIREMENTS OF SECTION 1106; (4) SUCH FINANCIAL
RECORDS ARE DISCLOSED IN RESPONSE TO A JUDICIAL; SUBPOENA
WHICH MEETS THE REQUIREMENTS OF SECTION 1107; (5)    SUCH
FINANCIAL RECORDS ARE DISCLOSED IN RESPONSE TO A FORMAL
WRITTEN REQUEST WHICH MEETS THE REQUIREMENTS OF
SECTION 1108." WHEN; THE PLAINTIFF DID NOT AUTHORIZE
DISCLOSURE OF HIS FINANCIAL RECORD, NO SEARCH WARRANT,
NO JUDICIAL SUBPOENA OF RECORDS, NO NOTIFICATION BEFORE,
DURING, OR AFTER DISSEMINATING INFORMATION.

VI.    WHETHER, THE DEFENDANT, MBTA EMPLOYEES CREDIT UNION'S
FAILURE TO PRODUCE TIMELY DOCUMENTS TO BE FILED WITH
THE NORFOLK COUNTY REGISTRAR OF DEEDS CAUSED THE
PLAINTIFF'S PROPERTY TITLE TO BE CLOUDED. WHEN; ON MARCH
31, 2003 A CERTIFIED TITLE SEARCH REVEALED A DEFECTIVE
DISCHARGE, CLOUDING THE TITLE OF PLAINTIFF'S PROPERTY.

VII.   WHETHER THE PLAINTIFFS PRIVACY RIGHTS UNDER THE MBTA EMPLOYEE CREDIT UNION WERE VIOLATED WHEN; TERMS & CONDITIONS OF THE MBTA EMPLOYEES CREDIT UNION AND THE EMPLOYEES RIGHTS AND RESPONSIBILITIES, EMPLOYEES CREDIT UNION POLICY MANUAL ARTICLE 8, STATES:

"CONFIDENTIALITY – IN ORDER THAT YOUR PRIVACY MAY BE PROTECTED, WE WILL NOT DISCLOSE ANY INFORMATION ABOUT YOU OR YOUR ACCOUNT TO ANY PERSON OR ORGANIZATION, OR AGENCY EXCEPT: …BY YOUR WRITTEN AUTHORIZATION WHICH SHALL ATOMATICALLY EXPIRE 45 DAYS AFTER OUR RECIEPT OF YOUR AUTHORIZATION". "IF AN UNAUTHORIZED DISCLOSURE HAS BEEN MADE, WE MUST INFORM YOU OF THE PARTICULARS OF THE DISCLOSURE WITHIN 3 DAYS AFTER WE HAVE DISCOVERED AND VERIFIED THAT AN UNAUTHORIZED DISCLOSURE HAS OCCURRED."

B.   Settlement Proposal and Response

(1)   Livingston's Proposal

$500,000.00 (Five Hundred Thousand Dollars) in compensation for four years that Plaintiffs life was in turmoil over the deliberate attempt by all parties involved in this case and related litigation (Richard Livingston v. Mortgage Service Center, Inc., et al., C.A. No.: 1:05-CV-11350-MLW) to make the Plaintiff Pro Se, Richard Livingston a non-entity in the financial decisions surrounding Plaintiffs Bankruptcy and Plaintiffs property located at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County. Plaintiff Pro Se, Richard Livingston will entertain any reasonable offer. Unfortunately, the Defendant, MBTA Employees Credit Union's Counsel informed Plaintiff Pro Se, Richard Livingston that the MBTA Employees Credit Union's position is Plaintiff does not have a case.

(2)   The Credit Union's Response

The Credit Union will not make a counterproposal at this time.

C.   Alternative Dispute Resolution

(1)   Livingston's ADR Position

It would be counter productive to engage in Alternative Dispute Resolution, for the following reasons: (1.) The Federal Question's in place are of such a complex nature that the threshold of ADR is too low to decide the issue of Bankruptcy discrimination 402 U.S. 637 (1971), Perez v. Campbell. (2.) During a face to face conference Defendant, MBTA

3

Employees Credit Union's Counsel informed Plaintiff Pro Se, Richard Livingston the MBTA Employees Credit Union's position is Plaintiff does not have a case.

    (2)    <u>The Credit Union's ADR Position</u>

The Credit Union believes that the nature of Livingston's claims and positions are such

that this case is currently not amenable to alternative dispute resolution.

    D.    <u>Trial by Magistrate Judge</u>

    (1)    <u>Livingston's Position</u>

NO! Plaintiff Pro Se, Richard Livingston does not consent to trial by Magistrate for the following reason: Pursuant to Federal Rules of Civil Procedure 16(c)(12)(b), Exemptions: The following class of cases are exempt from this rule, Pro Se Litigant. Due to the suspension which will likely lead to the disbarment of Plaintiff's former counsel. Richard Livingston has filed as a Pro Se Litigant.

    (2)    <u>The Credit Union's Position</u>

The Credit Union is not adverse to trial before Magistrate Judge Dein. The Credit Union

seeks to have this matter resolved in the most expeditious and efficient manner possible.

    E.    <u>Discovery</u>

    (1)    <u>Livingston's Position</u>

The Plaintiff Pro Se Richard Livingston will abide by the directive of the Court to limit discovery to develop information needed for a realistic assessment of the case as set forth in Federal Rules of Civil Procedure, Rule 26.1(b) ONLY.

    F.    <u>Filing of Dispositive Motion</u>

    (1)    <u>Livingston's Position</u>

The Plaintiff will oppose broad scope of discovery to limited scope of Discovery to only that which is germane.

III.    CONCISE SUMMARY OF THE PARTIES' POSITIONS

   A.    Livingston's Position I & II

The Plaintiff, Pro Se, Richard Livingston maintains and asserts the following:

   I.  DISSEMINATING PLAINTIFF'S FINANCIAL INFORMATION

   The Defendant, MBTA Employees Credit Union held a first mortgage on Plaintiff, Pro Se, Richard Livingston property located at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County, from 1987 until July 27, 2001.

At which time the Defendant, MBTA Employees Credit Union entombed the assets and encumbered by clouding the title of the Plaintiff's property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County, by transferring data, records, files, documents, and personal property (escrow account held in Plaintiffs name only) without the Plaintiff, Pro Se, Richard Livingston's notice, knowledge, consent or written authorization.

   Plaintiff, Pro Se, Richard Livingston brings the Court's attention to the Relief from Stay granted by the Bankruptcy Court. However in reciting the Bankruptcy Court's order which reads, "It is hereby Ordered, Adjudged and Decreed that that the Automatic Stay in the above Bankruptcy proceeding is vacated and extinguished for all purposes as to the Movant, her assignees and/or successors in interest, and the Movant may proceed to assert her rights against the Debtor within the divorce proceeding between the Debtor and Clifford and more fully described in Livingston v. Livingston, Norfolk County Probate and Family Court, Docket No. 97D1237-D1 by means any means necessary, all pursuant to applicable state and federal law." Upon granting the Motion for relief of Automatic Stay the Bankruptcy Court did not:

   a.  grant Margaret Clifford the right to enter into a new mortgage without notice to Plaintiff, Pro Se, Richard Livingston;
   b.  grant Margaret Clifford the right to enter into a new mortgage at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County, while the Bankruptcy case was still open;
   c.  grant Margaret Clifford the right to encumber the property with a new mortgage to the detriment of the Bankruptcy estate and the remaining Creditors;
   d.  grant Margaret Clifford the right to encumber the property with a new mortgage when this property was the only asset available to satisfy all of the Bankruptcy Estate Creditors;
   e.  grant Margaret Clifford the right to satisfy some of the Bankruptcy estate Creditors while prejudicing others.

The Relief of Automatic Stay from the Bankruptcy Court; the Divorce Agreement Contract; and Orders of the court, did not deny the Plaintiff, Pro Se, Richard Livingston the right to notification or declare him a non-entity on any action on the MBTA mortgage held on the Plaintiff, Pro Se, Richard Livingston property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County.

The Defendant, MBTA Employees Credit Union's release of documents without notification to Plaintiff, Pro Se, Richard Livingston assisted in creating and securing the refinancing of Plaintiff, Pro Se, Richard Livingston's assets which were protected by the U.S. Bankruptcy Court. The Defendant, MBTA Employees Credit Union was fully aware of the Bankruptcy filing as they were notified by the US Bankruptcy Court that the property held at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County was a protected asset on the Plaintiff matrix. One document used in the refinancing was the MBTA appraisal paid for by Plaintiff, Pro Se, Richard Livingston via/check from his former Attorney. This appraisal (personal property of the Plaintiff) was the basis for which the loan was created.

## LIABILITY & RELIEF SOUGHT

The Defendant, MBTA Employees Credit Union allowed the Plaintiff, Pro Se, Richard Livingston's property located at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County, to be garnished by assisting in the creation of a loan entombing the Plaintiffs, property by transferring data, records, files, and documents without the Plaintiff, Pro Se, Richard Livingston's notification, consent or written authorization. The Plaintiff, Pro Se, Richard Livingston relied on the Defendant, MBTA Employees Credit Union's duty to notification before releasing Plaintiff's personal and confidential financial records.

The Defendant, MBTA Employees Credit Union on their own document Mortgage Payoff Inquiry Form misrepresented the identification of inquirer as Plaintiff, Pro Se, Richard Livingston as borrower seeking the information on the account when in fact the Plaintiff never requested payoff figures. The Defendant, MBTA Employees Credit Union had obligatory conduct duty to notify the mortgage holder Plaintiff, Pro Se, Richard Livingston when transferring, releasing etc papers for the purpose of creating a loan on Plaintiffs asset.

The Defendant, MBTA Employees Credit Union is responsible for encumbering clouding the Title of the Plaintiff, Pro Se, Richard Livingston's asset at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County. A March 31, 2003 Certified Title Search of the Title revealed the existence of an outstanding claim that is not valid. The cloud reflects the original mortgage of $107, 000.00 held by Defendant, MBTA Employees Credit Union that in fact had been paid off. Thus the Defendant, MBTA Employees Credit Union has impaired the Plaintiff, Pro Se, Richard Livingston's equity position.

## BANKRUPTCY:

The Defendant, MBTA Employees Credit Union assisted in harming Plaintiff, Pro Se, Richard Livingston by violating his Bankruptcy protection, by providing payoff figures without permission and working in tandem with outside lenders to relief the Defendant, MBTA Employees Credit Union of the responsibility of a mortgage on Plaintiff, Pro Se, Richard Livingston property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County while it was under the control of United States Bankruptcy Court.

APPRAISAL:

A "2000" appraisal which was held by the Defendant, MBTA Employees Credit Union which was the personal and confidential property of the Plaintiff, Pro Se, Richard Livingston was used in an unusual, uncustomary and unheard of lending practice to create the loan which encumbered, Plaintiff, Pro Se, Richard Livingston's property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County, while it was under the control of United States Bankruptcy Court. Plaintiff, Pro Se, Richard Livingston never gave a written authorization or release for anyone to use this appraisal.

RELIEF SOUGHT:

Plaintiff, Pro Se, Richard Livingston, asks the sum of **$610,000.00** in compensation for:

PUNITIVE:

*Rational:* Calculated @ 3 times ½ property value ($170,000) of ($340,000)
**based on the 2001 appraisal without appreciation** = $510,000
*(Calculation is dependant on acceptant 93A claim)*

Conduct of Defendant, MBTA Employees Credit Union demonstrates intent, malice, willfulness, reckless disregard for Plaintiff, Pro Se, Richard Livingston's federal protected rights under the United States Bankruptcy Code and the Bank Act. Any amount adjudged must be sufficient to deter the Defendant, MBTA Employees Credit Union, or any employee of the corporation from repeating such conduct against a member of a vulnerable populace (debtor in bankruptcy denied a "Fresh Start") in the future. Defendant, MBTA Employees Credit Union on two fronts, first, when they took the decision of the Debtor/Plaintiff, Pro Se, Richard Livingston's right to decide the disposition of his asset. Second, when they allowed discriminatory by-law in direct violation of Bankruptcy Code to deny Debtor/Plaintiff, Pro Se, Richard Livingston's right to run for the Defendant, MBTA Employees Credit Union Board of Director's which again, compounding the humiliation caused when they disregarded Plaintiff as an entity when they releasing financial files to others without written authorization of the Plaintiff, Pro Se, Richard Livingston.

PAIN AND SUFFERING:

*Rational:*        Calculation 365 Days X 4 Yrs. = 1,460 days X 24 Hrs.
= 35,040 Hrs. @ $30.00. Hr. (used as value hourly scale) = $1,051,200.00

The United States Bankruptcy Court left the Plaintiff, Pro Se, Richard Livingston with the only asset, his ½ interest in property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County. The entombment of the Plaintiff's primary asset through negative banking practice caused the Plaintiff exasperation of preexisting documented medical illnesses.

EMOTIONAL DISTRESS:

*Rational:*      Calculated at ½ punitive = $255,000 and pain and
Suffering = $1,051,200.00 = $1,306,200.00

The Plaintiff, Pro Se, Richard Livingston suffered a negative impact on his psych caused by the taking of his asset through the workings of the Defendant, MBTA Employees Credit

Union when they, through their agents, allowed the transfer of records, files, documents which were used to refinance the only asset held by the Plaintiff, Pro Se, Richard Livingston. The failure to notify the Plaintiff when the MBTA had a duty to the Plaintiff to notify made it impossible for the Plaintiff to oppose the refinancing and encumbrance of his property, which was under the protection of the US Bankruptcy Court. The conduct of the Defendant, MBTA Employees Credit Union created the mess we have today.

The Plaintiff has lost all control, enjoyment of his asset because the Defendant, MBTA Employees Credit Union's action has clouded the title of the property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County. The property cannot be sold, transferred, etc. until the cloud caused by the action has been corrected.

LEGAL FEES/EXPENSES:

*Rational:*     The Plaintiff has incurred legal fees and expenses for the last four years of approximately $3,000.

EQUITY:

*Rational:*     The Plaintiff as Tenant-in-Common held a single ½ interest in the property at 15 Quarry Lane, Milton, Commonwealth of Massachusetts, Norfolk County, approximately ($170,000).

The property Title prior to the Defendant, MBTA Employees Credit Union's action was clear of any flaws; today the Title on the property is clouded.

_____

II   BANKRUPTCY CODE, SECTION 525(a)

On February 28, 2005 Plaintiff, Pro Se, Richard Livingston filed nomination papers to run for Defendant, MBTA Employees Credit Union Board of Director's. After filing the required signatures, Plaintiff, Pro Se, Richard Livingston, on February 28, 2005 received a call from Ms Ellen Pittman, Mgr. of Marketing & Admin of the MBTA Credit Union to come to the Credit Union to sign a Financial Credit Report release form. Plaintiff requested that it be faxed to him only to find that it had a whole host of information. Upon seeking Counsel, Plaintiff's Attorney's advice on March 1, 2005 was to sign the form **excluding** Financial Credit Report release. The MBTA Credit Union Nomination Committee on or about March 16, 2005 notified Plaintiff, Pro Se, Richard Livingston, by excerpt of By-Law (Article IX, Section 7) that disqualifies employees who have filed bankruptcy protection in the past five years. The Plaintiff, Pro Se, Richard Livingston had in fact filed for protections under the US Bankruptcy Code. After countless requests to CEO Philip O'Connor of the MBTA Credit Union for a complete copy of the MBTA Credit Union by-laws. It took the MBTA Employees Credit Union one year (March 2, 2006) to furnish Plaintiff, Pro Se, Richard Livingston a complete copy of the by-laws. The first time Plaintiff, Pro Se, viewed the by-laws was on March 2, 2006. The MBTA Employees Credit Union by-laws continue to create an impossibility for Debtor / Plaintiff, Pro Se, Richard Livingston to run for a second time April 5, 2006, one year after he was denied access to the ballot.

LIABILITY & RELIEF SOUGHT

The Defendant, MBTA Employees Credit Union violated specifically, the non-discrimination provision of Section 525(a) of the Bankruptcy Code (Protection Against Discrimination) when they formulated by-laws which made impossible the congressional policy (Historical & Revision Notes senate report no. 95-989) intent of a "Fresh Start" for a debtor. When the Defendant, MBTA Employees Credit Union refused to allow Plaintiff, Pro Se, Richard Livingston the opportunity to run for the Defendant, MBTA Employees Credit Union, Board of Directors. 402 U.S. 637 (1971), Perez v. Campbell. Organizations cannot take state and federal statutory rights barring discrimination away from an individual through a by-law that conflict with non-discriminatory state and federal policy. Section 525(a) of the Bankruptcy Code "Some courts have chosen to focus on Bankruptcy Code's policy "of aiding the rehabilitation of the debtors and providing a fresh start". These courts interpret the language of section 525(a) broadly to prohibit discrimination by governmental units that impedes the "fresh start" policy of the bankruptcy code." Historical & Revision Notes senate report no. 95-989

RELIEF SOUGHT:

Compensation for violation of Section 525(a) of the Bankruptcy Code (Protection Against Discrimination) and 402 U.S. 637 (1971), Perez v. Campbell Plaintiff, Pro Se, Richard Livingston, asks this Honorable Court in the interest of Public Policy to uphold the Congressional Legislative intent to a "Fresh Start" by invalidating, nullifying the discriminating By-Law of the Defendant, MBTA Employees Credit Union, Board of Directors.

**Plaintiff, Pro Se, Richard Livingston, asks the sum of $100.000.00 in compensation calculated as follows:**

PUNITIVE:

*Rational:*        Calculation 365 Days X 24 Hrs. = 8,760 Hrs @ $30.00 Hr. (used as value hourly scale) = $262,800.00

Conduct of Defendant, MBTA Employees Credit Union demonstrates intent, malice, willfulness, reckless disregard for Plaintiff, Pro Se, Richard Livingston's federal protected rights under the United States Bankruptcy code. The Defendant, MBTA Employees Credit Union violated specifically, the non-discrimination provision of Section 525(a) of the Bankruptcy Code (Protection Against Discrimination) when they formulated by-laws which made impossible the congressional policy intent of a "Fresh Start" for a debtor. When the Defendant, MBTA Employees Credit Union refused to allow Plaintiff, Pro Se, Richard Livingston the opportunity to run for the Defendant, MBTA Employees Credit Union, Board of Directors solely based on his filing Bankruptcy. Defendant allowed discriminatory by-law in to stand regardless of its direct violation of Bankruptcy Code. MBTA Employees Credit Union Board of Director's yet again April 2006 Election continues to maintain this discriminating by-law denying access to the ballot to anyone who has filed in the past five years.

PAIN AND SUFFERING:

*Rational:*    Calculation 365 Days X 24 Hrs. = 8,760 Hrs @ $30.00 Hr. (used as value hourly scale) = $262,800.00

Plaintiff, Pro Se, Richard Livingston's stress level was elevated as a direct cause of the Defendant, MBTA Employees Credit Union removing him from the ballot which made the Plaintiffs bankruptcy protection filing common knowledge among his otherwise unsuspecting co-workers. Although filing bankruptcy is a matter of public record it is not something that would ordinarily be advertised to ones peers. A memo between Defendant, MBTA Employees Credit Union's counsel and the CEO discussing the Plaintiff's Bankruptcy had been left on Plaintiffs desk after Plaintiff filed nomination papers, causing the exasperation of preexisting documented medical illnesses.

EMOTIONAL DISTRESS:

*Rational:*    Calculated at ½ punitive = $131,400.00 + Pain & Suffering $262,800.00 = $394,200.00

Plaintiff, Pro Se, Richard Livingston suffers a negative impact over the continued implementation of a by-law that continues to inadvertently advertise Plaintiffs filing for Bankruptcy protection and discharge in July of 2001. Many members of the MBTA Employee Credit Union have inquired and tried to solicit Plaintiff's nomination this year. Plaintiff's humiliation and emotion distress is exasperated when explaining the disqualification.

TOTAL SUM FOR RELIEF SOUGHT:

Plaintiff, Pro Se, Richard Livingston, asks the sum of **$610,000.00** in compensation for pain, suffering, emotional distress, loss, of equity calculated over the four years on the dissemination of personal financial information and the continued Bankruptcy discrimination.

_____

B.    The Credit Union's Position

Livingston has been a member of the Credit Union for many years. The Plaintiff has had

a number of accounts with the Credit Union, the earliest of which was opened in 1984 as a

savings account. Livingston and Margaret Livingston (neé Clifford) refinanced their then-

existing home mortgage in 1984 and Margaret Livingston became a joint owner of the account.

Livingston and Ms. Clifford were divorced in 1998. As provided for in the Livingstons'

divorce agreement and in accordance with the Probate Court's divorce decree and subsequent

orders, Ms. Clifford applied to refinance the mortgage indebtedness on the parties' Milton,

Massachusetts property for the first time in 1999. The purpose of the refinance was to pay off various joint debts and to obtain a lower interest rate. In 2001, apparently at Livingston's suggestion, Ms. Clifford sought to refinance the mortgage with the Credit Union. The mortgage application was approved and the refinance closing was scheduled to occur in March, 2001. Livingston filed a Chapter 13 Voluntary Bankruptcy Petition in early March, 2001. The Bankruptcy Petition stayed temporarily Ms. Clifford's efforts to refinance the property.

Ms. Clifford obtained the appropriate leave and orders from both the United States Bankruptcy Court and the Norfolk County Probate and Family Court to proceed with her refinance. Of interest, Ms. Clifford stated the following in a 2001 Amended Motion for Relief from Stay:

> 7.     At all times relevant hereto, Debtor has intentionally and willfully failed and refused to cooperate with discharging his obligations under the divorce agreement with regard to the debts of the parties, to wit:
>
> a.     The Debtor failed to appear for a refinance closing which Clifford had arranged with Assurance Mortgage Company in April 1999.
>
> b.     The Debtor failed to appear for a refinance closing which Clifford had arranged with National Mortgage Corp. in June 1999.
>
> c.     Pursuant to a Court Order issued subsequent to a <u>third</u> failure by the Debtor to cooperate, the Probate Court ordered the Debtor and Clifford to refinance with Meetinghouse Cooperative Bank.
>
> d.     The Debtor failed to appear for a refinance closing which Clifford had arranged with Meetinghouse Cooperative Bank in December 1999.
>
> e.     Subsequent to this <u>fourth</u> failure by the Debtor to cooperate, the Probate Court found the Debtor guilty of contempt.
>
> f.     The Debtor failed to appear for a refinance closing which Clifford had arranged with Allanach Mortgage Group in July 2000.
>
> g.     Subsequent to this <u>fifth</u> failure by the Debtor to cooperate, the Probate Court again found the Debtor guilty of contempt and

appointed a Special Master to insure that the Debtor cooperated with Clifford in accomplishing the refinancing in the future by authorizing the Special Master to sign the refinancing documents in the event that the Debtor failed and refused to do so. …

h.    In August 2000 and at the Debtor's request, Clifford withdrew the refinance application with Allanach Mortgage Group and initiated a refinance application with MBTA Credit Union.  A loan commitment was thereafter issued by MBTA Credit Union and a closing was scheduled for March 19, 2001.

i.    The Debtor filed for bankruptcy protection on March 7, 2001 in order to avoid the refinancing and admits same on Schedule A of his Bankruptcy Petition.

(Emphasis in original) Margaret Clifford stated the following in a related Probate and Family

Court Motion for Conveyance:

16.    The defendant is defrauding this court and defrauding Margaret Clifford by disobeying this honorable court's order and by misleading Margaret Clifford and the Special Master for the last seven month pretending to refinance and at the last minute filing for bankruptcy.  He is also defrauding the Special Master, GAL who helps him with his visitation issues, and to other GALs who worked on his case by trying to discharge their fees.

17.    He is currently running for the position on the Milton School Committee and a position as a selectman in the Town of Milton when he cannot even live up to his family obligations.

18.    Richard Livingston filed for bankruptcy making Margaret Clifford responsible for all of the credit card bills.

* * *

20.    Although responsible for paying half of the second mortgage, Richard Livingston does not and has not paid since December 1998.  Margaret Clifford continues to pay the entire amount ($180) every month.

* * *

22.    Margaret Clifford is a teacher, raising two children, making $20,000 less than Richard Livingston and solely paying for her

> daughter's college tuition. She cannot afford any more time and
> money on this refinance issue.

In a handwritten Motion for Relief from Stay, Ms. Clifford indicated that Mr. Livingston was

found guilty of contempt and jailed in August, 2000. The May 24, 2001 Norfolk County Probate

and Family Court Judgment of Contempt indicated that:

> The former wife shall have the right to refinance the first and second mortgages
> with respect to the former marital home in order to satisfy the existing first and
> second mortgages and to pay outstanding marital debt if she so elects.

Ms. Clifford applied to refinance the mortgage on the Milton property with RAH Federal

Credit Union. The refinance was approved. This transaction is the subject of the factually-

related Livingston lawsuit styled <u>Richard Livingston v. Mortgage Service Center, Inc., et al.</u>,

C.A. No.: 1:05-CV-11350-MLW. The Credit Union provided a mortgage payoff figure to RAH

Federal Credit Union, or its attorney, in July, 2001. In addition, it is possible that the Credit

Union provided a copy of the real estate appraisal that the Credit Union had obtained in

connection with the failed March, 2001 refinance. Attorney Victoria Schepps, as closing

attorney in connection with the RAH Federal Credit Union refinance, delivered a payoff check in

the amount of $106,750.94 to the Credit Union on or about August 2, 2001. The Credit Union

provided a discharge of mortgage in due course.

Factually unrelated to the foregoing refinance machinations, Richard Livingston

submitted an application to be a candidate for election to the MBTA Employees Credit Union's

Board of Directors in March, 2005. After meeting to discuss a number of members' candidacy

applications, the election committee wrote to Mr. Livingston on March 11, 2005, and indicated

as follows:

> We are in receipt of your nomination papers to become a candidate for election to
> our Board of Directors. Please be advised that your eligibility does not comply
> with our By-Laws (Article IX, Section 7) as you have a bankruptcy which

occurred in the five year previous to your candidacy request. Therefore, your name will not appear on the ballot on April 5, 2005.

The letter was mailed to Mr. Livingston at his home.

Mr. Livingston wrote to the Credit Union several times during the month of March, 2005. In each of his letters, Mr. Livingston alleged that Credit Union's unwillingness to include his name on the Board of Directors election ballot was illegal and in violation of Section 525(a) of the Bankruptcy Code. In this regard, Section 525(a) (protection against discriminatory treatment) indicates, in applicable part, that:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against … a person that is or has been a Debtor under this title or a bankrupt or a Debtor under the Bankruptcy Act or another person with whom such bankrupt or Debtor has been associated, solely because such bankrupt or Debtor is or has been a Debtor under the Bankruptcy Act… .

The Code defines a "governmental unit" to mean:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department; agency or instrumentality of the United States (but not a United States Trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality or a foreign state; or other foreign or domestic government.

Livingston alleges that the Credit Union violated a duty of confidentiality owed to him when it provided RAH Federal Credit Union with information in connection with the RAH Federal Credit Union refinance. Livingston alleges that the Credit Union did not obtain a release from him to disclose such information and that, in fact, he had "requested" and a notation was made on the bank records and computer system that no information concerning any of Livingston's financial matters involving the Credit Union were to be released to any party without notifying him first and receiving his permission. Livingston alleges that the foregoing conduct was also a violation of M.G.L. Chapter 93A.

The information provided to RAH Federal Credit Union and its representatives consisted of a payoff figure and, perhaps, a real estate appraisal report in connection with the failed effort to refinance the Milton property through the Credit Union. Livingston's argument ignores the fact that his former wife was a joint member and borrower on the subject account. Livingston attempts to draw a distinction between his former wife's status and his own (e.g., "prior to the closing Defendant … was contacted and provided a payoff figure in connection with the mortgage applied for by Margaret Clifford <u>non-employee non-borrower</u> without the knowledge of Plaintiff Richard Livingston." (emphasis added.) Margaret Clifford had equal rights to the account and was entitled to authorize the Credit Union to provide RAH Federal Credit Union with a copy of the appraisal report and the payoff figure. In fact, Margaret Clifford's refinance with RAH Federal Credit Union was based upon express court authorization to do so. Livingston fails to state a claim upon which relief can be granted.

Livingston's refinance-related claims are also barred by the applicable Massachusetts three-year tort statute of limitations. The refinance occurred in July, 2001, and Livingston did not file his lawsuit until June, 2005.

Livingston alleges that the Credit Union discriminated against him by failing to allow him to place his name on the election ballot for one of five Credit Union director positions, "[c]learly violating the spirit of Section 525(a) of the United States Bankruptcy Code." Livingston alleges further that the Credit Union "has released false information and defamed [him] to certain members and officers of the Credit Union."

The April, 2005 Credit Union by-laws set forth eligibility criteria for members seeking to become a candidate for the Board of Directors. As relevant to Livingston's claims, the by-laws stipulate that: "[a] candidate may not have declared bankruptcy within the previous five (5)

years." Livingston sought bankruptcy protection in March, 2001, thus precluding his eligibility from being a candidate for the Board of Directors in April, 2005.

11 U.S.C., § 525(a) prohibits "a governmental unit" from engaging certain discriminatory conduct. Contrary to the Plaintiff's allegations, Section 525(a) does not apply to the Credit Union. As indicated above, "a governmental unit" is specifically defined in 11 U.S.C.A., § 101(27) and the Credit Union does not fall within the definition of a governmental unit. Accordingly, Mr. Livingston's discrimination claim fails as a matter of law.

The Credit Union is aware of no basis for Livingston's defamation claim. Specifically, the Credit Union is not aware of any potentially false or defamatory information that the Credit Union release "to certain members and officers of the Credit Union." In the event that certain information was released (e.g., published), then such statements were truthful, which is a defense to the defamation claim.

IV.    JOINT DISCOVERY PLAN

(1)    Livingston's Position

The Plaintiff, Pro se, Richard will abide by the directive of the Court to limit discovery to develop information for a realistic assessment of the case as set forth in Federal Rules of Civil Procedure, Rule 26(b) ONLY.

(2)    The Credit Union's Position

The Credit Union proposes that the parties exchange Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) and L.R. 26.2(A) on or before June 5, 2006. Subsequently, the Credit Union will be permitted to file a dispositive motion (i.e., Motion for Summary Judgment), which Livingston will oppose. The Credit Union believes that its Motion for Summary Judgment will either resolve the entire case or, at the least, narrow significantly the issues in dispute, along with

the attendant scope of reasonable discovery.  The Credit Union believes that this is the most cost-efficient manner in which to proceed.  In the event that the Credit Union's Motion does not result in the dismissal of all of Livingston's claims, then the parties propose that the Court schedule a second Scheduling Conference for the purposes of implementing a tailored discovery plan.

V.      PROPOSED SCHEDULE FOR THE FILING OF MOTIONS

      (1)      Livingston's Position

Plaintiff, Pro Se, Richard Livingston does not agree that the Credit Union should be allowed to file a dispositive motion before the scheduling conference set for April 26, 2006 at 3:00 PM has been completed.

      (2)      The Credit Union's Position

Please see Section IV above.

VI.     RELATED LITIGATION

This case is factually related to a second lawsuit filed by Livingston which is pending with the United States District Court, District of Massachusetts (Richard Livingston v. Mortgage Service Center, Inc., et al., C.A. No.:  1:05-CV-11350-MLW).  All of the defendants in this case have filed Motions to Dismiss, which Livingston has opposed.

VII.    CERTIFICATION OF THE CREDIT UNION AND CREDIT UNION'S COUNSEL

We, Philip M. O'Connor, Chief Executive Officer, MBTA Employees Credit Union, and Peter C. Netburn, counsel to the Credit Union, certify that we have conferred with a view to establishing a budget for the costs of conducting the full course, and various alternative courses, for this litigation and to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in L.R. 16.4.  The Credit Union has conferred with Attorney Netburn primarily through the Credit Union's outside counsel, Gary J. Kravetz.

The Credit Union and its counsel certify that they will continue to consider the resolution through this litigation through the use of Alternative Dispute Resolution program, if such programs appear to be appropriate and reasonably calculation to lead to the resolution of this litigation.

**MBTA EMPLOYEES CREDIT UNION**

By    */s/   Philip M. O'Connor*
      Philip M. O'Connor, CEO

**MBTA EMPLOYEES CREDIT UNION**
By its counsel,

      */s/   Peter C. Netburn*
      Peter C. Netburn

**THE PLAINTIFF,**
***PRO SE,***

     */s/  Richard Livingston*
Richard Livingston
149 Warren Avenue
Milton, MA  02186-2009
(617) 698-4333

**MBTA EMPLOYEES CREDIT UNION,**
by its attorneys,

     */s/   Peter C. Netburn*
Peter C. Netburn, BBO 546935
HERMES, NETBURN, O'CONNOR
     & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA  02110-3113
(617) 728-0050
(617) 728-0052 (F)

Dated:  April 20, 2006

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 20, 2006.

         */s/  Peter C. Netburn*
         Peter C. Netburn