**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **RICHARD LIVINGSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-CV-11349-RCL** |
| | ) | |
| **MBTA EMPLOYEES CREDIT UNION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT MBTA EMPLOYEES CREDIT UNION'S**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

*Pro Se* Plaintiff Richard Livingston[1] ("Livingston" or "Plaintiff") has brought this action

against Defendant MBTA Employees Credit Union (the "Credit Union") seeking damages

related to: (1) the July 27, 2001 refinancing by his former wife – Margaret Livingston, neé

Clifford ("Ms. Clifford") – of certain mortgages on the jointly owned former marital home

located at 15 Quarry Lane, Milton, Massachusetts (the "Milton Property"), and (2) the Credit

Union's rejection of Livingston's nomination application to run in the April 5, 2005 election of

the Credit Union's Board of Directors. Livingston has alleged causes of action against the Credit

Union for: (1) violations of M.G.L. c.93A (the "Massachusetts Consumer Protection Act"), (2)

---

[1]    The original complaint in this matter was filed on Livingston's behalf by William E. Gately, Jr. on June 27,
2005. On July 1, 2005, the Clerk informed Mr. Gately by letter of his inactive status in the Court's Bar. By
Order of the Massachusetts Supreme Judicial Court entered on October 17, 2005 in In Re: William E. Gately,
Jr., Docket No. BD-2005-077, Attorney Gately's license to practice law was temporarily suspended. On or
about December 27, 2005, Livingston filed *pro se* a "Complaint and Jury Claim," which was docketed by the
Clerk as an Amended Complaint. The Amended Complaint is nearly identical to the original Complaint. On
June 22, 2006, the Massachusetts Supreme Judicial Court entered a Judgment of Disbarment against Attorney
Gately in In Re: William E. Gately, Jr., Docket No. BD-2006-028.

violations of "privacy rights" provided by (unidentified) federal and state statutes, (3) violation

of 11 U.S.C. § 525(a); and (4) defamation.[2]

The time has come for Livingston's eight year campaign of harassment and abuse of the

legal system to end. When the facts are considered in the light most favorable to Livingston and

all inferences drawn are in his favor, all of Livingston's claims against the Credit Union fail as a

matter of law. The alleged disclosures of information by the Credit Union do not evidence

"violations of privacy" or any other wrongful conduct. Livingston's claims for "violations of

privacy" brought pursuant to state statute and the federal Right to Financial Privacy Act are

barred by the applicable statutes of limitations. Livingston's Federal Trade Commission Act

claim for "violations of privacy" fails because the law does not provide a private right of action.

Livingston's claim for "violations of privacy" under "Article 8" of the Credit Union's "Policy

Manual" fails to state a claim. Livingston's claim for violation of 11 U.S.C. § 525(a) fails

because that law is inapplicable to the Credit Union. Livingston's defamation allegation fails to

state a claim, and there are no facts that establish a *prima facie* case. Finally, Livingston's claim

for violation of the Massachusetts Consumer Protection Act fails for at least two reasons. First,

Livingston did not deliver a demand letter pursuant to M.G.L. c.93A, § 9, which is a

jurisdictional prerequisite to suit. Second, as a matter of law, none of the conduct alleged by

Livingston constitutes unfair or deceptive conduct.

Pursuant to Fed. R. Civ. P. 56(c), the Credit Union moves for summary judgment in its

favor as to all counts of Plaintiff's Complaint.

---

[2]    Although the Amended Complaint does not include a separate count for "defamation," Paragraph 26 of the "General Facts and Allegations" states that: "[u]pon information and belief [the Credit Union] has released false information and defamed [Livingston] to certain members and officers of the Credit Union." The Credit Union will address this allegation as if it were asserted as a cause of action.

## STATEMENT OF FACTS AND RELATED PROCEEDINGS

Livingston and Ms. Clifford acquired the Milton Property by deed dated August 29, 1985.[3]  On April 28, 1994, Livingston and Ms. Clifford granted a mortgage (the "Credit Union Mortgage") to the Credit Union regarding the Milton Property.[4]

Ms. Clifford was able to refinance the Milton Property after navigating a tortuous legal path strewn with landmines laid by Livingston.  The journey began after Ms. Clifford and Livingston were divorced by the Norfolk Probate and Family Court ("Probate Court") in Dedham, Massachusetts, on or about December 14, 1998 (the "Divorce Litigation").[5]  In accordance with the divorce decree, Ms. Livingston applied to refinance the mortgage indebtedness of the Milton Property in 1999 to pay off certain marital debts and obtain a lower interest rate.[6]  Livingston was found in contempt by the Probate Court on January 31, 2000, after he failed to appear for at least two closings.[7]  After Livingston failed to appear for yet another closing, the Probate Court found Livingston in contempt again on August 24, 2000, and appointed a special master to act on Livingston's behalf should he refuse to cooperate again.[8]

---

[3]  See certified copy of the deed attached as Exhibit 1 to the July 14, 2006 Affidavit of Peter C. Netburn ("Netburn Aff."), which is filed herewith.

[4]  See certified copy of the mortgage attached as Exhibit 2 to the Netburn Aff.

[5]  See certified copies of the Judgment of Divorce Nisi and the Separation Agreement, which was incorporated into the Judgment of Divorce Nisi, attached as part of Exhibit 3 to the Netburn Aff.

[6]  As set forth in the Separation Agreement, in lieu of child support, Livingston was required to pay the entire first mortgage on the Milton Property.  The first mortgage was held by the Credit Union.  Ms. Clifford was responsible for the second mortgage, and Livingston and Ms. Clifford were each responsible for one half of the marital credit card debt.  As provided in Section E(5) of Exhibit A to the Separation Agreement, Ms. Clifford was authorized to refinance the Milton Property in order to consolidate the first and second mortgages, the marital credit card debt and a bank loan.  After such refinancing, Livingston would be required to pay the principal and interest reflective of the first mortgage debt, one half of the second mortgage debt and one half of the credit card debt.  Accordingly, Livingston's monthly payment would likely rise after the refinancing.

[7]  See certified copy of the Judgment dated January 31, 2000 attached as part of Exhibit 3 to the Netburn Aff.

[8]  See certified copy of the Order dated August 24, 2000 attached as part of Exhibit 3 to the Netburn Aff.

By application dated January 16, 2001, Livingston and Ms. Clifford applied for refinancing of the Milton Property through the Credit Union. See ¶ 6 of the July 11, 2006 Affidavit of Thomas J. Henry ("Henry Aff."), which is filed herewith. By letter dated February 5, 2001, the Credit Union notified Livingston and Ms. Clifford that their application has been approved. See Henry Aff. at ¶ 7; and copy of the letter attached thereto as Exhibit A. The closing of the refinancing was scheduled for March 19, 2001. See Henry Aff. at ¶ 8.

To prevent the scheduled refinancing of the Credit Union Mortgage, Livingston filed a Voluntary Petition for Chapter 13 bankruptcy on March 7, 2001.[9] Undeterred by yet another unnecessary delay, on April 24, 2001, Ms. Clifford was granted relief from the automatic stay of proceedings by the Bankruptcy Court, which specifically authorized Ms. Clifford to assert her rights against Livingston in the divorce proceedings.[10] The Probate Court again found Livingston in contempt on May 24, 2001, and authorized Ms. Clifford to refinance and consolidate first mortgage, second mortgage and other marital debts without Livingston's signature.[11]

Ms. Clifford did not reapply for refinancing through the Credit Union, but rather refinanced the Milton Property with Chittenden Trust Co. d/b/a Mortgage Service Center ("Chittenden") on July 27, 2001 (the "July 27, 2001 Refinancing").[12] Falconer Appraisal Services, Inc. prepared an appraisal of the Milton Property for Chittenden in anticipation of the

---

[9]    The petition was filed on Livingston's behalf by Attorney Gately. See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff.

[10]    See certified copy of Order dated April 24, 2001 attached as Exhibit 5 to the Netburn Aff.

[11]    See certified copy of Judgment of Contempt dated May 24, 2001 attached as part of Exhibit 3 to the Netburn Aff.

[12]    See certified copy of the mortgage to Chittenden Trust Co. d/b/a Mortgage Service Center attached as Exhibit 6 to the Netburn Aff.

July 27, 2001 Refinancing.[13]  In addition, Attorney Victoria Schepps, the closing attorney for the

July 27, 2001 Refinancing representing Chittenden, requested a mortgage payoff computation of

the Credit Union Mortgage.  In the ordinary course of business and as required by Massachusetts

law, the Credit Union calculated and forwarded the mortgage payoff to Attorney Schepps on July

26, 2001.[14]  Coincidently, Livingston was discharged from bankruptcy on July 26, 2001.[15]  The

Credit Union received a full payoff of the Credit Union Mortgage as a result of the July 27, 2001

Refinancing, and executed a discharge of the Credit Union Mortgage on August 24, 2001.[16]

Livingston filed a petition for interlocutory relief regarding the Divorce Litigation with

the Massachusetts Appeals Court on October 22, 2001, which was denied on October 23, 2001.[17]

Livingston filed a motion for an emergency hearing in the Bankruptcy Litigation on November

2, 2001.  By order dated November 6, 2001, the court denied the motion on the grounds that

Livingston was seeking relief from orders entered in the Probate Court.[18]  The court stated that

Livingston's "remedy, if one exists, is an appeal from the orders of the Probate Court."  Id.

Livingston accepted the Bankruptcy Court's suggestion, and he filed an appeal regarding

the Divorce Litigation with the Appeals Court pursuant to M.G.L. c.261, § 27D on July 26, 2002,

---

[13]   See Appraisal, a copy of which was produced by Livingston in the course of this litigation, attached as Exhibit 7
      to the Netburn Aff.

[14]   See Mortgage Payoff Inquiry, a copy of which was produced by Livingston in the course of this litigation,
      attached as Exhibit 8 to the Netburn Aff.

[15]   See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff.

[16]   See certified copy of the mortgage discharge regarding the Credit Union Mortgage attached as Exhibit 9 to the
      Netburn Aff.

[17]   See attested copy of the Appeals Court docket attached as Exhibit 10 to the Netburn Aff.

[18]   See certified copy of Order dated November 6, 2001 attached as Exhibit 11 to the Netburn Aff.

which was denied on July 29, 2002. [19]  Unfazed, Livingston filed a Notice of Appeal regarding

the Divorce Litigation with the Appeals Court on August 26, 2002.[20]  In addition, Livingston

filed an Application for Direct Appellate Review with the Supreme Judicial Court on September

9, 2002, which was denied on October 30, 2002.[21]  In an unpublished Memorandum and Order

pursuant to Rule 1:28, the Appeals Court affirmed the judgments of the Probate Court on

December 11, 2003.[22]

Livingston turned his attention next to Victoria Schepps, the July 27, 2001 Refinancing

closing attorney.  Livingston sued Ms. Schepps in Stoughton District Court on or about January

19, 2004 (the "Schepps Litigation").[23]  During the course of the Schepps Litigation, Livingston

tried unsuccessfully to depose numerous Credit Union agents and employees.  The court allowed

Ms. Schepps' Motion for Judgment on the Pleadings, and entered Judgment on March 15, 2005.

Livingston's Motion for Reconsideration, to vacate Judgment and Amend the Complaint, was

denied on April 28, 2005.

Unrelated to all of the foregoing, in March, 2005, Livingston submitted a nomination

application to run in the April 5, 2005 election of the Credit Union's Board of Directors.  See ¶ 4

of the July 11, 2006 Affidavit of Ellen Pittman ("Pittman Aff."), which is filed herewith.

Through a memorandum dated March 10, 2005, the Credit Union's Election Committee

---

[19]   See attested copy of the Appeals Court docket attached as Exhibit 12 to the Netburn Aff.

[20]   See attested copy of the Appeals Court docket attached as Exhibit 13 to the Netburn Aff.

[21]   See attested copy of the Supreme Judicial Court docket attached as Exhibit 14 to the Netburn Aff.

[22]   See copy of Livingston v. Livingston, 2003 WL 22928524 (Mass. App. Ct. Dec. 11, 2003) attached as Exhibit
      15 to the Netburn Aff.

[23]   The lawsuit was filed on Livingston's behalf by Attorney Gately.  See certified copies of the Complaint and
      docket regarding the Schepps Litigation attached respectively as Exhibits 16 and 17 to the Netburn Aff.

informed the Board of Directors that it was unable to approve Livingston's candidacy under the

Credit Union's By-Laws, because he had filed bankruptcy within the previous five (5) years.

See Pittman Aff. at ¶ 5; copy of the memorandum attached thereto as Exhibit A; and certified

copy of the Credit Union By-Laws attached as Exhibit 18 to the Netburn Aff.  By letter of March

11, 2005, the Credit Union's Election Committee notified Livingston that he did not meet the

eligibility criteria of the Credit Union's By-Laws.  See Pittman Aff. at ¶ 7, and copy of the letter

attached thereto as Exhibit B.  The letter of March 11, 2005 was mailed by Ms. Pittman to

Livingston at his home address.  See Pittman Aff. at ¶ 9, copy of the letter attached thereto as

Exhibit B, and copy of postmarked envelope attached thereto as Exhibit C.  Livingston filed suit

against the Credit Union in Suffolk Superior Court on April 4, 2005, seeking to enjoin the

election ("Election Injunction Litigation").[24]  Livingston's request for a temporary restraining

order was denied on April 4, 2005, and Judgment of Dismissal was entered on April 20, 2005.

Finally, Livingston filed two separate actions in the United States District Court for the

District of Massachusetts on June 27, 2005, one of which is the present case.  In the other action,

Livingston filed a twenty-one count complaint against RAH Federal Credit Union ("RAH"),[25]

Chittenden,[26] and Ms. Schepps (the "RAH Litigation").[27]

---

[24]     See certified copies of the complaint and docket attached as Exhibits 19 and 20 to the Netburn Aff.

[25]     RAH held the second mortgage on the Milton Property prior to the July 27, 2001 Refinancing.

[26]     Defendants Mortgage Service Center, Inc., Cumex, Inc. and Chittenden Bank have filed a motion to substitute
Chittenden Trust Company as the real party-in-interest, which motion remains pending.

[27]     See docket and pleadings regarding Livingston vs. Mortgage Service Center, Inc., et. al., C.A. No. 05-CV-
11350-MLW (D.Mass.).  The lawsuit was filed on Livingston's behalf by Attorney Gately.  As in the present
litigation, Livingston is now acting pro se in the RAH Litigation.  Motions to dismiss on behalf of all
defendants were filed on March 20, 2006, and remain pending.

**ARGUMENT**

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 3222, 106 S.Ct. 2548

(1986); and Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 50 (1st Cir. 2000).

Once the moving party has made a preliminary showing that no genuine issue of material fact

exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the

presence of a trialworthy issue."  Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st

Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).

**II.     LIVINGSTON'S "VIOLATIONS OF PRIVACY" CLAIMS FAIL AS A MATTER
OF LAW.**

In Count II of the Amended Complaint, Livingston alleges "a violation of the privacy

rights as defined under state and federal statutes…."  No such statutes are identified anywhere in

the Amended Complaint.  The Commonwealth of Massachusetts has codified a right to privacy

in M.G.L. c.214, § 1B, ("Right to Privacy Law").  Livingston identified two federal statues in the

Joint Statement filed in this matter on April 20, 2006.  In Section II(A)(IV) of the Joint

Statement, Livingston alleged that his privacy rights were impacted by the Credit Union's

alleged violation of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act").[28]  In

Section II(A)(V) of the Joint Statement, Livingston alleged that his rights to financial privacy

were impacted by the Credit Union's alleged violation of the Right to Financial Privacy Act, 12

---

[28]    In the same section, Livingston alleged also that his privacy rights were violated by the Credit Union in
violation of M.G.L. c.93A.  The Credit Union will address Livingston's c.93A claims separately, because they
were alleged in Count I of the Amended Complaint.

U.S.C. §§ 3401 – 3422 ("Financial Privacy Act").  In addition, in Section II(A)(VII) of the Joint

Statement, Livingston alleged that the Credit Union violated his privacy rights under "Article 8"

of the Credit Union's "Policy Manual."

A.      The Alleged Disclosures of Information by the Credit Union Fail to Evidence "Violations of Privacy" or Any Other Wrongful Conduct.

Livingston's only factual allegations in support of his claims of "violations of privacy"

are that the Credit Union wrongfully:  provided a mortgage payoff figure and an appraisal of the

Milton Property to Chittenden.[29]  These actions on the part of the Credit Union fail to evidence

"violations of privacy" or any other wrongful conduct.

The Credit Union Mortgage was part of Account No. 209173 at the Credit Union.  See

Henry Aff. at ¶ 5.  Livingston and Ms. Clifford both members of the Credit Union, and were

joint owners of Account No. 209173.  Id.  Notwithstanding Livingston's and Ms. Clifford's

marital status, both Livingston and Ms. Clifford remained on Account No. 209173, as co-

borrowers on the Credit Union Mortgage, until the mortgage was paid and discharged.  Id.

The July 27, 2001 Refinancing was conducted in accordance with the Orders of the

Bankruptcy Court and Probate Court.  As a matter of law, providing the payoff figure regarding

the Credit Union Mortgage on behalf of Ms. Clifford in connection with the July 27, 2001

Refinancing was not a violation of Livingston's privacy.

Notwithstanding Livingston's allegation in Section III(A)(I) of the Joint Statement,  there

is no proof that the Credit Union provided an appraisal of the Milton Property to Chittenden.  In

the course of this litigation, Livingston produced a copy of an appraisal prepared by Falconer

---

[29]    See ¶¶ 15 and 18 of the Amended Complaint, and Section III(A)(I) of the Joint Statement.

Appraisal Services, Inc. **for Chittenden**.[30]    Nevertheless, even if the Credit Union provided an

appraisal of the Milton property to Chittenden on behalf of Ms. Clifford in connection with the

July 27, 2001 Refinancing, such action would not have violated Livingston's privacy.

Accordingly, Livingston's "violations of privacy" claims fail as a matter of law and

summary judgment should be granted in the Credit Union's favor.

B.    Livingston's "Right to Privacy Law" Claim is Barred by the Applicable Three (3) Year Statute of Limitations.

Notwithstanding that Livingston has not identified any state statute that provides him

privacy rights that the Credit Union allegedly violated, M.G.L. c.214, § 1B is entitled Right of

Privacy.  The statute mandates that, "[a] person shall have a right against unreasonable,

substantial or serious interference with his privacy."  The applicable statute of limitations

regarding claims under M.G.L. c.214, §1B is three years.  Finney v. Madico, Inc., 674 N.E.2d

655, 659 (Mass. App. Ct. 1997)(citing the three year statute of limitations found at M.G.L. c.260,

§ 2A pertaining to actions of tort).

Each of the alleged violations of Livingston's privacy occurred prior to the July 27, 2001

Refinancing.  Suit was filed in the present case on June 27, 2005.  Livingston's claim for

violation of his right of privacy under state statute is barred by the applicable statute of

limitations.  Accordingly, such claim fails as a matter of law and summary judgment should be

granted in the Credit Union's favor.

C.    Livingston's FTC Act Claim Fails Because the Law does not Provide a Private Cause of Action.

Notwithstanding that Livingston did not identify in the Amended Complaint any federal

statute that provides him privacy rights that the Credit Union allegedly violated, Livingston

---

[30]    See Appraisal, a copy of which is attached as Exhibit 7 to the Netburn Aff.

identified the FTC Act in the Joint Statement.

The FTC Act does not provide a private cause of action.  See Naylor v. Case and McGrath, 585 F.2d 557, 561 (2nd Cir. 1978); Holloway v. Bristol-Myers Corp., 485 F.2d 986, 998 (D.C. Cir 1973); Tanol Distributors, Inc. v. Panasonic Co., 1987 WL 13319, mem. op. at *2 (D.Mass. 1987); and First Phone Co. of New England, Inc. v. New England Telephone and Telegraph Co., 1981 WL 2052, mem. op. at *3 (D.Mass. 1981).

Accordingly, Livingston's FTCA Act claim fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

D.    Livingston's Financial Privacy Act Claim is Barred by the Applicable Three (3) Year Statute of Limitations.

Notwithstanding that Livingston did not identify in the Amended Complaint any federal statute that provides him privacy rights that the Credit Union allegedly violated, Livingston identified the Right to Financial Privacy Act in the Joint Statement.  Specifically, Livingston quoted language from 12 U.S.C. § 3402.

The Right to Financial Privacy Act "prohibits financial institutions from disclosing customer information to most government authorities absent the consent of or formal notice to the customer."  Raikos v. Bloomfield State Bank, 703 F. Supp. 1365 (S.D. Ind. 1989).  As such, the Right to Financial Privacy Act does not apply to the facts alleged by Livingston against the Credit Union.  The Credit Union did not provide any of Livingston's financial records to any governmental authority, and Livingston has not alleged such.  The Credit Union is a state-chartered credit union, and not a governmental authority.[31]

Furthermore, the statute of limitations for claims under the Right to Financial Privacy Act

---

[31]    See certification attached as Exhibit 21 to the Netburn Aff.

is three years.  See 12 U.S.C. § 3416.

Accordingly, Livingston's claim pursuant to the FTC Act fails as a matter of law and

summary judgment should be granted in the Credit Union's favor.

      E.      Livingston's Claim under "Article 8" of the Credit Union's "Policy Manual" Fails to State a Claim.

Although the claims for "violations of privacy" alleged in the Amended Complaint were

limited to "privacy rights as defined under state and federal statutes," in Section II(A)(VII) of the

Joint Statement, Livingston alleged that the Credit Union violated his privacy rights under

"Article 8" of the Credit Union's "Policy Manual."  In the course of this litigation, Livingston

produced a partial copy of a document entitled, "Terms and Conditions of Electronic Funds

Transfer" ("EFT Terms and Conditions")[32]  The confidentiality language quoted in the Joint

Statement is contained in numbered paragraph 8 of the EFT Terms and Conditions.

The EFT Terms and Conditions are irrelevant to the alleged disclosures of information by

the Credit Union (*i.e.*, providing a mortgage payoff figure and allegedly an appraisal of the

Milton Property to Chittenden).  As explained above, such conduct was not wrongful and did not

violate Livingston's privacy.

Accordingly, Livingston's claim for "violations of privacy" under "Article 8" of the

Credit Union's "Policy Manual" fails as a matter of law and summary judgment should be

granted in the Credit Union's favor.

**III.     THE CREDIT UNION'S REQUIREMENT THAT A CANDIDATE FOR THE CREDIT UNION'S BOARD OF DIRECTORS MAY NOT HAVE DECLARED BANKRUPTCY WITHIN THE PREVIOUS FIVE YEARS DOES NOT VIOLATE 11 U.S.C. § 525(A).**

In Count III of the Amended Complaint, Livingston alleges "violtation (sic) of United

---

[32]    See document attached as Exhibit 22 to the Netburn Aff.

States Bankruptcy Code."  Specifically, Livingston accuses the Credit Union of violation of 11

U.S.C. 525(a) by prohibiting him for running in the election for the Credit Union's Board of

Directors due to his recent bankruptcy filing.

> 11 U.S.C. § 525(a) provides that:
>
> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such grant to, discriminate with respect to such grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been … a bankrupt … under the Bankruptcy Act, … solely because such bankrupt … is or has been … a bankrupt … under the Bankruptcy Act….

The definition of "governmental unit" does not include credit unions.  11 U.S.C. § 101(27).[33]

Again, the Credit Union is a state-chartered credit union, and not a department, agency or

instrumentality of the Commonwealth of Massachusetts or any other governmental unit.[34]  The

prohibitions of 11 U.S.C. § 525(a) do not apply to the Credit Union, and Livingston's claim

pursuant thereto fails as a matter of law.

Notwithstanding that Livingston's sole allegation for "violtation (sic) of United States

Bankruptcy Code" specified Section 525(a), private employers are prohibited from

discriminating with respect to employment on the basis of bankruptcy status by Section 525(b).

However, Livingston's attempt to run in an election for an unpaid position on the Credit Union's

Board of Directors does not constitute "employment."  Finally, Section 525(b) does not apply to

"refusal to hire claims."  Pastore v. Medford Savings Bank, 186 B.R. 553, 554-5 (1995).

Accordingly, Livingston's claim for violations of the Bankruptcy Code fails as a matter

---

[33]    As defined in 11 U.S.C. § 101(27), "[t]he term 'governmental unit' means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government."

[34]    See certification attached as Exhibit 21 to the Netburn Aff.

of law and summary judgment should be granted in the Credit Union's favor.

**IV.    LIVINGSTON'S DEFAMATION ALLEGATION FAILS TO STATE A CLAIM, AND THERE ARE NO FACTS THAT ESTABLISH A _PRIMA FACIE_ CASE.**

In Paragraph 26 of the Amended Complaint, as part of the "General Facts and Allegations," Livingston alleged that:  "[u]pon information and belief [the Credit Union] has released false information and defamed [Livingston] to certain members and officers of the Credit Union."  Livingston did not plead a separate count for defamation, and alleged no additional facts in support of his claim.

Livingston fails to identify the false information allegedly released.  He fails to even allege if the false information was released orally or in writing.  Livingston fails to identify the person(s) that allegedly made the defamatory statement or to whom it was made.  Livingston's qualified assertion, "upon information and belief," of defamation is too vague to state a claim. See Spence v. Boston Edison Co., 459 N.E.2d 80, 87 (Mass. 1983); and Whitinsville Plaza, Inc. v. Kotseas, 390 N.E.2d 243, 251 (Mass. 1979).

As stated by the Court in Yohe v. Nugent, 321 F.3d 3539, 40 (1st Cir. 2003):

[d]efamation is the publication, either orally or in writing, or a statement concerning the plaintiff which is false and causes damage to the plaintiff. *McAvoy v. Shufrin*, 401 Mass. 593, 597, 518 N.E.2d 513 (1988).  To establish a claim of defamation, a plaintiff must satisfy the following elements.  First, the defamatory language must 'hold the plaintiff up to contempt, hatred, scorn, or ridicule or tend to impair his standing in the minds of a considerable and respectable class in the community.' *Tartaglia v. Townsend*, 19 Mass. App. Ct. 693, 696, 477 N.E.2d 178 (1985) (quotation omitted).  Second, the statement must have been to at least one other individual other than the one defamed. *Brauer v. Globe Newspaper Company*, 351 Mass. 53, 56, 217 N.E.2d 736 (1966).  Third, where the speech is a matter of public concern, a defamation plaintiff must prove not only that the statements were defamatory, but also that they were false. *Dulgarian v. Stone*, 420 Mass. 843, 847, 652 N.E.2d 603 (1995); [citation omitted].  Finally, the plaintiff must show that he suffered special damages and must set forth these damages specifically. *Lynch v. Lyons*, 303 Mass. 116, 119, 20 Mass. App. Ct. 953 (1939).

As explained previously, through a memorandum dated March 10, 2005, the Credit Union's Election Committee informed the Board of Directors that it was unable to approve Livingston's candidacy under the Credit Union's By-Laws, because he had filed bankruptcy within the previous five (5) years.  See Pittman Aff. at ¶ 5; copy of the memorandum attached thereto as Exhibit A; and certified copy of the Credit Union By-Laws attached as Exhibit 18 to the Netburn Aff.  This memorandum does not support a claim for defamation for a number of reasons, not the least of which is that the information contained therein was true.  Livingston's bankruptcy filing is also a matter of public record.  The Credit Union is not aware of any other information released about Livingston "to certain members and officers of the Credit Union."

By letter of March 11, 2005, the Credit Union's Election Committee notified Livingston that he did not meet the eligibility criteria of the Credit Union's By-Laws.  See Pittman Aff. at ¶ 7, and copy of the letter attached thereto as Exhibit B.  Ms. Pittman mailed the letter of March 11, 2005 to Livingston at his home address.  See Pittman Aff. at ¶ 9, copy of the letter attached thereto as Exhibit B, and copy of postmarked envelope attached thereto as Exhibit C.  This letter does not support a claim for defamation for a number of reasons, including that it was not published to anyone other than Livingston and the information contained therein was true.  Again, Livingston's bankruptcy filing is a matter of public record

Accordingly, Livingston's claim for defamation fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

**V.      LIVINGSTON'S CLAIM FOR VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT FAIL AS A MATTER OF LAW.**

Livingston's claim for violation of the Massachusetts Consumer Protection Act fails for at least two reasons.  First, Livingston did not deliver a demand letter pursuant to M.G.L. c.93A,

§ 9, which is a jurisdictional prerequisite to suit.  In addition, none of the conduct alleged by

Livingston constitutes unfair or deceptive conduct.

        A.        Livingston's Claim for Violations of the Massachusetts Consumer Protection Act
                  is Barred for Failure to Satisfy the Requirements of M.G.L. c.93A, § 9(3).

As required by M.G.L. c.93A, § 9(3), at least thirty days prior to filing suit alleging

violation of the Massachusetts Consumer Protection Act, a claimant must mail or deliver a

written demand for relief to the prospective respondent ("93A Demand Letter").  A claimant's

right to relief under the Massachusetts Consumer Protection Act is foreclosed as a matter of law

with respect to unfair or deceptive acts or practices that are not referenced in a 93A Demand

Letter.  Bressel v. Jolicoeur, 609 N.E.2d 94, 98 (Mass. App. Ct. 1993).

The 93A Demand Letter listing the specific deceptive practices is a prerequisite to suit,

and is a special element that must be alleged and proved.  Entrialgo v. Twin City Dodge, Inc.,

333 N.E.2d 202, 204 (Mass. 1975).  The purpose of the 93A Demand Letter is to facilitate the

settlement and damages aspects of the Massachusetts Consumer Protection Act, and as such "the

letter and notice therein is a procedural requirement, the absence of which is a bar to suit."  Id.

In that Entrialgo, the court affirmed the denial of relief under the Massachusetts Consumer

Protection Act for violations of credit disclosure statutes by an automobile dealership, which

violations were found by a master, based upon "the failure to complain of the practice in the

c.93A, § 9(3), demand letter."  Id.

Livingston did not mail or deliver a 93A Demand Letter to the Credit Union.  Thomas

Henry, Mortgage Manager for the Credit Union, did not receive by mail or delivery any letter

purporting to be a 93A Demand Letter, or similar correspondence or notice, from or on behalf of

Livingston prior to commencement of the present litigation.  See Henry Aff. at ¶ 13.  In

particular, Mr. Henry did not receive a copy of "a demand for settlement … under chapter 93a" of May 25, 2005 alleged in Paragraph 29 of the Amended Complaint. <u>Id.</u>  Mr. Henry has searched the Credit Union's document files, and has not found a 93A Demand Letter from or on behalf of Livingston or any other document indicating that such a letter was ever received by the Credit Union. <u>See</u> Henry Aff. at ¶ 14.  In the course of his representation of the Credit Union, it is the Credit Union's usual practice to provide Gary Kravetz with copies of all letters which purport to be a 93A Demand Letter, or similar correspondence or notices, mailed or delivered to the Credit Union. <u>See</u> ¶ 4 of the July 12, 2006 Affidavit of Gary Kravetz (Kravetz Aff."), which is filed herewith.  Mr. Kravetz did not receive a 93A Demand Letter, or similar correspondence or notice, from or on behalf of Livingston prior to commencement of the present litigation, including a copy of "a demand for settlement … under chapter 93a" of May 25, 2005 alleged in Paragraph 29 of the Amended Complaint. <u>See</u> Kravetz Aff. at ¶ 5.  The Board of Directors has never discussed at a regular or special meeting a 93A Demand Letter sent by or on behalf of Livingston. <u>See</u> Kravetz Aff. at ¶ 6.  Furthermore, no member of the Credit Union's senior management, including Chief Executive Officer Philip O'Connor, has ever informed Mr. Kravetz that a 93A Demand Letter sent by or on behalf of Livingston was received by the Credit Union. <u>Id.</u>

Accordingly, Livingston's claim for violations of the Massachusetts Consumer Protection Act fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

  B.  The Livingston's Claim for Violations of the Massachusetts Consumer Protection Act Fails Because the Credit Union's Alleged Conduct was Neither Unfair Nor Deceptive.

For conduct to be actionable under the Massachusetts Consumer Protection Act, it must

be unfair or deceptive.  M.G.L. c.93A, § 2(a).  "[T]he litmus test for transgression of Chapter 93A

involves behavior which falls within 'the penumbra of some … established concept of

unfairness,' and is sufficiently 'unethical or unscrupulous' to be actionable under the statute."

Gooley v. Mobil Oil Corp., 851 F.2d 513, 515-6 (1st Cir. 1988).  The alleged conduct "must at

least come within shouting distance of some established concept of unfairness." Massachusetts

School of Law at Andover, Inc. v. American Bar. Ass'n., 142 F.3d 26, 42 (1998).  None of the

conduct alleged by Livingston is "so seriously deceptive and harmful" or "unethical, oppressive,

or unscrupulous" as to constitute violations of the Massachusetts Consumer Protection Act.

Zayre Corp. v. Computer Sys. Of Am., Inc., 511 N.E.2d 23, 30 n. 23 (Mass. App. Ct. 1987) and

PMP Associates, Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975).

       With respect to the July 27, 2001 Refinancing, Livingston's only allegations are that the

Credit Union wrongfully:  provided a mortgage payoff figure and an appraisal of the Milton

Property to Chittenden, and failed to provide a discharge of the Credit Union Mortgage.[35]  The

July 27, 2001 Refinancing was conducted in accordance with the Orders of the Bankruptcy Court

and Probate Court.  As a matter of law, providing the mortgage payoff figure regarding the

Credit Union Mortgage in connection with the July 27, 2001 Refinancing was not unfair or

deceptive, and was required under Massachusetts law and accepted Standard business practices.

Ms. Clifford was a co-borrower on the Credit Union Mortgage, and was fully authorized to

obtain such information and refinance the Milton Property.  Furthermore, in the course of this

---

[35]  See ¶¶ 15, 18 and 20 of the Amended Complaint, and Section III(A)(I) of the Joint Statement.  Livingston's
M.G.L. c.93A claims fail also because he has not alleged that he suffered any loss or damages caused by the
Credit Union's alleged conduct.  As stated by the Massachusetts Supreme Judicial Court in Hershenow v.
Enterprise Rent-A-Car Co. of Boston, Inc., 840 N.E.2d 526, 535 (Mass. 2006), "[a] consumer is not, however,
entitled to redress under G.L. c. 93A, where no loss has occurred."  The Court explained that, "a plaintiff
seeking remedy under G.L. c. 93A, § 9, must demonstrate that even a *per se* deception caused a loss."  Id. at
533.  As such, Livingston's c.93A claim fails as a matter of law.

litigation Livingston produced a copy of an appraisal prepared by Falconer Appraisal Services, Inc. **for Chittenden**.[36]  Notwithstanding Livingston's allegation Section III(A)(I) of the Joint Statement,  there is no proof that the Credit Union provided an appraisal of the Milton Property to Chittenden.  Nevertheless, even if the Credit Union did provide a copy of an appraisal of the Milton Property to Chittenden on behalf of Ms. Clifford in connection with the July 27, 2001 Refinancing, such conduct would not have been unfair or deceptive.

Notwithstanding Livingston's allegation that the Credit Union failed to provide a discharge of the Credit Union Mortgage following the July 27, 2001 Refinancing, a certified copy of such recorded Mortgage Discharge is attached as Exhibit 9 to the Netburn Aff.  The discharge correctly identifies the mortgagor, the mortgagee, the date of the mortgage and the location of the mortgaged property.  Although the discharge contains an inaccurate reference to the book and page of the mortgage, the discharge is effective.  As stated in REBA Title Standard No. 21, entitled "Scriveners' Errors":[37]

> [a] title is not defective by reason of: …
>
> (6) The omission of, or an erroneous reference to, either the date or the record reference (but not both) to a mortgage in the case of an assignment, partial release, or discharge of such mortgage.

The Credit Union has not claimed an interest in the Milton Property since the mortgage loan was fully paid by check dated August 2, 2001.  See Henry Aff. at ¶ 11.  Furthermore, the Credit Union is willing to provide a scriveners' affidavit and/or corrected mortgage discharge with respect to the Credit Union Mortgage, even though the recorded discharge dated August 24, 2001 is effective.  See Henry Aff. at ¶ 12.  As a matter of law, the Credit Union's discharge of the

---

[36]     See Appraisal, a copy of which is attached as Exhibit 7 to the Netburn Aff.

[37]     A certified copy of Title Standard No. 21 of the Real Estate Bar Association for Massachusetts is attached as Exhibit 23 to the Netburn Aff.

Credit Union Mortgage was not unfair or deceptive.

Finally, the Credit Union's enforcement of the eligibility criteria in its By-Laws for candidates to the Board of Directors was not unfair or deceptive.  Mr. Livingston had declared bankruptcy within five years of the election, and therefore was not an eligible candidate.  As explained above, such conduct was not in violation of 11 U.S.C. § 525(a).

Accordingly, Livingston's claim for violations of the Massachusetts Consumer Protection Act fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

**CONCLUSION**

For the foregoing reasons, Defendant MBTA Employees Credit Union respectfully requests that this Honorable Court take the following actions:

(1)    grant summary judgment in favor of the Credit Union as to all counts of the Plaintiff's Complaint;

(2)    enter judgment in favor of the Credit Union; and

(3)    grant such other and further relief as this Court deems appropriate.

**MBTA EMPLOYEES CREDIT UNION**,
By its attorneys,

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 14, 2006.

/s/ Peter C. Netburn
Peter C. Netburn, BBO No. 546935
Eric C. Hipp, BBO No. 642658
HERMES, NETBURN, O'CONNOR
    & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA  02110-3113
(617) 728-0050 – Tel.
(617) 728-0052 – Fax

/s/ Eric C. Hipp
Eric C. Hipp

Dated:  July 14, 2006

G:\DOCS\ECH\Clients\CUMIS\MBTA ECU - Livingston\Pleadings\MSJ\Memorandum of Law in Support of MSJ.doc