UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **RICHARD LIVINGSTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-11349-RCL |
| ) | |
| **MBTA EMPLOYEES CREDIT UNION,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT MBTA EMPLOYEES CREDIT UNION'S
STATEMENT OF THE MATERIAL FACTS
TO WHICH THERE IS NO GENUINE ISSUE**

Defendant MBTA Employees Credit Union (the "Credit Union"), pursuant to LR 56.1, provides the following statement of the material facts of record to which it contends there is not genuine issue to be tried:

1. Richard Livingston and Margaret Livingston, neé Clifford ("Ms. Clifford") acquired the residential home and property located at 15 Quarry Lane, Milton, Massachusetts (the "Milton Property") by deed dated August 29, 1985. See certified copy of the deed attached as Exhibit 1 to the July 14, 2006 Affidavit of Peter C. Netburn ("Netburn Aff."), which is filed herewith.

2. On April 28, 1994, Livingston and Ms. Clifford granted a mortgage (the "Credit Union Mortgage") to the Credit Union regarding the Milton Property. See certified copy of the mortgage attached as Exhibit 2 to the Netburn Aff.

3. Ms. Clifford and Livingston were divorced by the Norfolk Probate and Family Court ("Probate Court") in Dedham, Massachusetts, on or about December 14, 1998 (the

"Divorce Litigation"). See certified copies of the Judgment of Divorce Nisi and the Separation Agreement, which was incorporated into the Judgment of Divorce Nisi, attached as part of Exhibit 3 to the Netburn Aff.

4. In accordance with the divorce decree, Ms. Livingston applied to refinance the mortgage indebtedness of the Milton Property in 1999 to pay off certain marital debts and obtain a lower interest rate. See Separation Agreement attached as part of Exhibit 3 to the Netburn Aff.

5. Livingston was found in contempt by the Probate Court on January 31, 2000, after he failed to appear for at least two closings. See certified copy of the Judgment dated January 31, 2000 attached as part of Exhibit 3 to the Netburn Aff.

6. After Livingston failed to appear for yet another closing, the Probate Court found Livingston in contempt again on August 24, 2000, and appointed a special master to act on Livingston's behalf should he refuse to cooperate again. See certified copy of the Order dated August 24, 2000 attached as part of Exhibit 3 to the Netburn Aff.

7. By application dated January 16, 2001, Livingston and Ms. Clifford applied for refinancing of the Milton Property through the Credit Union. See ¶ 6 of the July 11, 2006 Affidavit of Thomas J. Henry ("Henry Aff."), which is filed herewith.

8. By letter dated February 5, 2001, the Credit Union notified Livingston and Ms. Clifford that their application has been approved. See Henry Aff. at ¶ 7; and copy of the letter attached thereto as Exhibit A.

9. The closing of the refinancing was scheduled for March 19, 2001. See Henry Aff. at ¶ 8.

10. To prevent the scheduled refinancing of the Credit Union Mortgage, Livingston filed a Voluntary Petition for Chapter 13 bankruptcy on March 7, 2001.  See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff.

11. On April 24, 2001, Ms. Clifford was granted relief from the automatic stay of proceedings by the Bankruptcy Court, which specifically authorized Ms. Clifford to assert her rights against Livingston in the divorce proceedings.  See certified copy of Order dated April 24, 2001 attached as Exhibit 5 to the Netburn Aff.

12. The Probate Court again found Livingston in contempt on May 24, 2001, and authorized Ms. Clifford to refinance and consolidate first mortgage, second mortgage and other marital debts without Livingston's signature.  See certified copy of Judgment of Contempt dated May 24, 2001 attached as part of Exhibit 3 to the Netburn Aff.

13. Ms. Clifford refinanced the Milton Property with Chittenden Trust Co. d/b/a Mortgage Service Center ("Chittenden") on July 27, 2001 (the "July 27, 2001 Refinancing"). See certified copy of the mortgage to Chittenden Trust Co. d/b/a Mortgage Service Center attached as Exhibit 6 to the Netburn Aff.

14. Falconer Appraisal Services, Inc. prepared an appraisal of the Milton Property for Chittenden in anticipation of the July 27, 2001 Refinancing.  See Appraisal, a copy of which was produced by Livingston in the course of this litigation, attached as Exhibit 7 to the Netburn Aff.

15. Attorney Victoria Schepps, the closing attorney for the July 27, 2001 Refinancing representing Chittenden, requested a mortgage payoff computation of the Credit Union Mortgage.  In the ordinary course of business and as required by Massachusetts law, the Credit Union calculated and forwarded the mortgage payoff to Attorney Schepps on July 26, 2001.  See

3

Mortgage Payoff Inquiry, a copy of which was produced by Livingston in the course of this litigation, attached as Exhibit 8 to the Netburn Aff.

16. Livingston was discharged from bankruptcy on July 26, 2001. See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff.

17. The Credit Union received a full payoff of the Credit Union Mortgage as a result of the July 27, 2001 Refinancing, and executed a discharge of the Credit Union Mortgage on August 24, 2001. See certified copy of the mortgage discharge regarding the Credit Union Mortgage attached as Exhibit 9 to the Netburn Aff.

18. Livingston filed a petition for interlocutory relief regarding the Divorce Litigation with the Massachusetts Appeals Court on October 22, 2001, which was denied on October 23, 2001. See attested copy of the Appeals Court docket attached as Exhibit 10 to the Netburn Aff.

19. Livingston filed a motion for an emergency hearing in the Bankruptcy Litigation on November 2, 2001. By order dated November 6, 2001, the court denied the motion on the grounds that Livingston was seeking relief from orders entered in the Probate Court. See certified copy of Order dated November 6, 2001 attached as Exhibit 11 to the Netburn Aff.

20. Livingston filed an appeal regarding the Divorce Litigation with the Appeals Court pursuant to M.G.L. c.261, § 27D on July 26, 2002, which was denied on July 29, 2002. See attested copy of the Appeals Court docket attached as Exhibit 12 to the Netburn Aff.

21. Livingston filed a Notice of Appeal regarding the Divorce Litigation with the Appeals Court on August 26, 2002. See attested copy of the Appeals Court docket attached as Exhibit 13 to the Netburn Aff.

22. Livingston filed an Application for Direct Appellate Review with the Supreme Judicial Court on September 9, 2002, which was denied on October 30, 2002. See attested copy of the Supreme Judicial Court docket attached as Exhibit 14 to the Netburn Aff.

23. In an unpublished Memorandum and Order pursuant to Rule 1:28, the Appeals Court affirmed the judgments of the Probate Court on December 11, 2003. See copy of Livingston v. Livingston, 2003 WL 22928524 (Mass. App. Ct. Dec. 11, 2003) attached as Exhibit 15 to the Netburn Aff.

24. Livingston sued Ms. Schepps in Stoughton District Court on or about January 19, 2004 (the "Schepps Litigation"). See certified copies of the Complaint and docket regarding the Schepps Litigation attached respectively as Exhibits 16 and 17 to the Netburn Aff.

25. The court allowed Ms. Schepps' Motion for Judgment on the Pleadings, and entered Judgment on March 15, 2005. See certified copy of the docket regarding the Schepps Litigation attached as Exhibit 17 to the Netburn Aff.

26. Livingston's Motion for Reconsideration, to vacate Judgment and Amend the Complaint, was denied on April 28, 2005. See certified copy of the docket regarding the Schepps Litigation attached as Exhibit 17 to the Netburn Aff.

27. In March, 2005, Livingston submitted a nomination application to run in the April 5, 2005 election of the Credit Union's Board of Directors. See ¶ 4 of the July 11, 2006 Affidavit of Ellen Pittman ("Pittman Aff."), which is filed herewith.

28. Through a memorandum dated March 10, 2005, the Credit Union's Election Committee informed the Board of Directors that it was unable to approve Livingston's candidacy under the Credit Union's By-Laws, because he had filed bankruptcy within the previous five (5)

years. See Pittman Aff. at ¶ 5; copy of the memorandum attached thereto as Exhibit A; and certified copy of the Credit Union By-Laws attached as Exhibit 18 to the Netburn Aff.

29. By letter of March 11, 2005, the Credit Union's Election Committee notified Livingston that he did not meet the eligibility criteria of the Credit Union's By-Laws. See Pittman Aff. at ¶ 7, and copy of the letter attached thereto as Exhibit B.

30. The letter of March 11, 2005 was mailed by Ms. Pittman to Livingston at his home address. See Pittman Aff. at ¶ 9, copy of the letter attached thereto as Exhibit B, and copy of postmarked envelope attached thereto as Exhibit C.

31. Livingston filed suit against the Credit Union in Suffolk Superior Court on April 4, 2005, seeking to enjoin the election ("Election Injunction Litigation"). See certified copies of the complaint and docket regarding the Election Injunction Litigation attached as Exhibits 19 and 20 to the Netburn Aff.

32. Livingston's request for a temporary restraining order was denied on April 4, 2005, and Judgment of Dismissal was entered on April 20, 2005. See certified copy of the docket regarding the Election Injunction Litigation attached as Exhibit 20 to the Netburn Aff.

33. Livingston filed two separate actions in the United States District Court for the District of Massachusetts on June 27, 2005, one of which is the present case. In the other action, Livingston filed a twenty-one count complaint against RAH Federal Credit Union ("RAH"), Chittenden, and Ms. Schepps (the "RAH Litigation"). See docket and pleadings regarding Livingston vs. Mortgage Service Center, Inc., et. al., C.A. No. 05-CV-11350-MLW (D.Mass.).

34. The Credit Union Mortgage was part of Account No. 209173 at the Credit Union. See Henry Aff. at ¶ 5.

35.	Livingston and Ms. Clifford both members of the Credit Union, and were joint owners of Account No. 209173.  See Henry Aff. at ¶ 5.

36.	Notwithstanding Livingston's and Ms. Clifford's marital status, both Livingston and Ms. Clifford remained on Account No. 209173, as co-borrowers on the Credit Union Mortgage, until the mortgage was paid and discharged.  See Henry Aff. at ¶ 5.

37.	The Credit Union is a state-chartered credit union, and not a department, agency or instrumentality of the Commonwealth of Massachusetts or any other governmental unit.  See certification attached as Exhibit 21 to the Netburn Aff.

38.	In Section II(A)(VII) of the Joint Statement, Livingston alleged that the Credit Union violated his privacy rights under "Article 8" of the Credit Union's "Policy Manual."  In the course of this litigation, Livingston produced a partial copy of a document entitled, "Terms and Conditions of Electronic Funds Transfer" ("EFT Terms and Conditions").  The confidentiality language quoted in the Joint Statement is contained in numbered paragraph 8 of the EFT Terms and Conditions.  See document attached as Exhibit 22 to the Netburn Aff.

39.	Thomas Henry, Mortgage Manager for the Credit Union, did not receive by mail or delivery any letter purporting to be a 93A Demand Letter, or similar correspondence or notice, from or on behalf of Livingston prior to commencement of the present litigation.  See Henry Aff. at ¶ 13.

40.	In particular, Mr. Henry did not receive a copy of "a demand for settlement … under chapter 93a" of May 25, 2005 alleged in Paragraph 29 of the Amended Complaint.  See Henry Aff. at ¶ 13.

41.     Mr. Henry has searched the Credit Union's document files, and has not found a 93A Demand Letter from or on behalf of Livingston or any other document indicating that such a letter was ever received by the Credit Union.  See Henry Aff. at ¶ 14.

42.     In the course of his representation of the Credit Union, it is the Credit Union's usual practice to provide Gary Kravetz with copies of all letters which purport to be a 93A Demand Letter, or similar correspondence or notices, mailed or delivered to the Credit Union. See ¶ 4 of the July 12, 2006 Affidavit of Gary Kravetz (Kravetz Aff."), which is filed herewith.

43.     Mr. Kravetz did not receive a 93A Demand Letter, or similar correspondence or notice, from or on behalf of Livingston prior to commencement of the present litigation, including a copy of "a demand for settlement … under chapter 93a" of May 25, 2005 alleged in Paragraph 29 of the Amended Complaint.  See Kravetz Aff. at ¶ 5.

44.     The Board of Directors has never discussed at a regular or special meeting a 93A Demand Letter sent by or on behalf of Livingston.  See Kravetz Aff. at ¶ 6.

45.     No member of the Credit Union's senior management, including Chief Executive Officer Philip O'Connor, has ever informed Mr. Kravetz that a 93A Demand Letter sent by or on behalf of Livingston was received by the Credit Union.  See Kravetz Aff. at ¶ 6.

46.     As stated in REBA Title Standard No. 21, entitled "Scriveners' Errors":

[a] title is not defective by reason of: …

(6) The omission of, or an erroneous reference to, either the date or the record reference (but not both) to a mortgage in the case of an assignment, partial release, or discharge of such mortgage.

See certified copy of Title Standard No. 21 of the Real Estate Bar Association for Massachusetts is attached as Exhibit 23 to the Netburn Aff.

47.     The Credit Union has not claimed an interest in the Milton Property since the mortgage loan was fully paid by check dated August 2, 2001.  <u>See</u> Henry Aff. at ¶ 11.

48.     The Credit Union is willing to provide a scriveners' affidavit and/or corrected mortgage discharge with respect to the Credit Union Mortgage, even though the recorded discharge dated August 24, 2001 is effective.  <u>See</u> Henry Aff. at ¶ 12.

**MBTA EMPLOYEES CREDIT UNION**,
By its attorneys,


/s/ Peter C. Netburn
Peter C. Netburn, BBO No. 546935
Eric C. Hipp, BBO No. 642658
HERMES, NETBURN, O'CONNOR
    & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA  02110-3113
(617) 728-0050 – Tel.
(617) 728-0052 – Fax

Dated: July 14, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 14, 2006.


/s/ Eric C. Hipp
Eric C. Hipp

G:\DOCS\ECH\Clients\CUMIS\MBTA ECU - Livingston\Pleadings\MSJ\Concise Statement of the Material Facts as to Which There is No Genuine Issue.doc