UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICHARD LIVINGSTON, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 05-CV-11349-RCL |
| MBTA EMPLOYEES CREDIT UNION, ) | |
| Defendant. ) | |

**DEFENDANT MBTA EMPLOYEES CREDIT UNION'S
OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND THE AMENDED COMPLAINT**

**REQUEST FOR ORAL ARGUMENT**

Defendant MBTA Employees Credit Union (the "Credit Union") hereby opposes *Pro Se* Plaintiff Richard Livingston's ("Livingston" or "Plaintiff") motion to amend the Amended Complaint.

**INTRODUCTION**

Livingston[1] brought this action against Defendant MBTA Employees Credit Union (the "Credit Union") seeking damages related to: (1) the July 27, 2001 refinancing by his former wife – Margaret Livingston, neé Clifford ("Ms. Clifford") – of certain mortgages on the jointly owned former marital home located at 15 Quarry Lane, Milton, Massachusetts (the "Milton

---

[1] The original complaint in this matter was filed on Livingston's behalf by William E. Gately, Jr. on June 27, 2005. On July 1, 2005, the Clerk informed Mr. Gately by letter of his inactive status in the Court's Bar. By Order of the Massachusetts Supreme Judicial Court entered on October 17, 2005 in In Re: William E. Gately, Jr., Docket No. BD-2005-077, Attorney Gately's license to practice law was temporarily suspended. On or about December 27, 2005, Livingston filed *pro se* a "Complaint and Jury Claim," which was docketed by the Clerk as an Amended Complaint. The Amended Complaint is nearly identical to the original Complaint. On June 22, 2006, the Massachusetts Supreme Judicial Court entered a Judgment of Disbarment against Attorney Gately in In Re: William E. Gately, Jr., Docket No. BD-2006-028.

Property"), and (2) the Credit Union's rejection of Livingston's nomination application to run in the April 5, 2005 election of the Credit Union's Board of Directors.

On July 14, 2006, the Credit Union filed a Motion for Summary Judgment seeking dismissal of all of Livingston's claims.[2] A few hours later, Livingston filed a motion to amend the amended complaint to add a claim that the Credit Union violated 11 U.S.C. § 362, the Automatic Stay provision of the U.S. Bankruptcy Code by accepting payoff of the mortgage granted to the Credit Union by Livingston and Ms. Clifford on the Milton Property.  Specifically, Livingston proposes to add to the allegations of Count III ("Violtation (sic) of the United States Bankrupcy (sic) Code"), which presently contains a claim that the Credit Union violated 11 U.S.C. § 525(a) by rejecting Livingston's nomination application to run in the April 5, 2005 election of the Credit Union's Board of Directors.[3]  Livingston proposes to add the following two paragraphs to Count III:

> 37. As a creditor the Defendant, MBTA Employees (sic) Credit Union never filed a Motion for Relief from the Automatic Stay before accepting payoff of the Plaintiff's mortgage.
>
> 38. The Defendant Employees (sic) Credit Union's acts and omissions as described above also constitute a violation of the Automatic Stay Provisions of the United States Bankruptcy Code.

Livingston's motion to amend should be denied for at least four reasons.  First, Livingston's motion is untimely and should be denied on the basis of undue delay and prejudice

---

[2] Livingston has alleged causes of action against the Credit Union for: (1) violations of M.G.L. c.93A (the "Massachusetts Consumer Protection Act"), (2) violations of "privacy rights" provided by (unidentified) federal and state statutes, (3) violation of 11 U.S.C. § 525(a); and (4) defamation.  Although the Amended Complaint does not include a separate count for "defamation," Paragraph 26 of the "General Facts and Allegations" states that: "[u]pon information and belief [the Credit Union] has released false information and defamed [Livingston] to certain members and officers of the Credit Union."

[3] As detailed in the Credit Union's Motion for Summary Judgment and supporting documents filed therewith, Livingston did not meet the eligibility criteria of the Credit Union's By-Laws because he had filed bankruptcy within the previous five (5) years.

to the Credit Union. Second, the proposed amendment is futile because the Bankruptcy Court vacated and extinguished the Automatic Stay for all purposes as to Ms. Clifford by Order dated April 24, 2005. Third, the proposed amendment is futile because he was discharged from bankruptcy on July 26, 2001, the day before the refinancing. Finally, the motion should be denied because an action for violation of the automatic stay should be brought before the Bankruptcy Court.

## ABBREVIATED STATEMENT OF FACTS

Livingston and Ms. Clifford acquired the Milton Property by deed dated August 29, 1985.[4] On April 28, 1994, Livingston and Ms. Clifford granted a mortgage (the "Credit Union Mortgage") to the Credit Union regarding the Milton Property.[5]

Ms. Clifford was able to refinance the Milton Property after a long journey, which began when Ms. Clifford and Livingston were divorced by the Norfolk Probate and Family Court ("Probate Court") in Dedham, Massachusetts, on or about December 14, 1998 (the "Divorce Litigation").[6] In accordance with the divorce decree, Ms. Livingston applied to refinance the mortgage indebtedness of the Milton Property in 1999 to pay off certain marital debts and to

---

[4] See certified copy of the deed attached as Exhibit 1 to the July 14, 2006 Affidavit of Peter C. Netburn ("Netburn Aff."), which was filed in connection with the Credit Union's Motion for Summary Judgment on July 14, 2006.

[5] See certified copy of the mortgage attached as Exhibit 2 to the Netburn Aff.

[6] See certified copies of the Judgment of Divorce Nisi and the Separation Agreement, which was incorporated into the Judgment of Divorce Nisi, attached as part of Exhibit 3 to the Netburn Aff.

obtain a lower interest rate.[7] Livingston was found in contempt by the Probate Court on January 31, 2000, after he failed to appear for at least two closings.[8] After Livingston failed to appear for yet another closing, the Probate Court found Livingston in contempt again on August 24, 2000, and appointed a special master to act on Livingston's behalf should he refuse to cooperate again.[9]

By application dated January 16, 2001, Livingston and Ms. Clifford applied to refinance of the Milton Property through the Credit Union. See ¶ 6 of the July 11, 2006 Affidavit of Thomas J. Henry ("Henry Aff."), which was filed in connection with the Credit Union's Motion for Summary Judgment on July 14, 2006. By letter dated February 5, 2001, the Credit Union notified Livingston and Ms. Clifford that their application has been approved. See Henry Aff. at ¶ 7; and copy of the letter attached thereto as Exhibit A. The closing of the refinancing was scheduled for March 19, 2001. See Henry Aff. at ¶ 8.

To prevent the scheduled refinancing of the Credit Union Mortgage, Livingston filed a Voluntary Petition for Chapter 13 bankruptcy on March 7, 2001.[10] Undeterred by yet another unnecessary delay, on April 24, 2001, Ms. Clifford was granted relief from the automatic stay of proceedings by the Bankruptcy Court, which specifically authorized Ms. Clifford to assert her

---

[7] As set forth in the Separation Agreement, in lieu of child support, Livingston was required to pay the entire first mortgage on the Milton Property. The first mortgage was held by the Credit Union. Ms. Clifford was responsible for the second mortgage, and Livingston and Ms. Clifford were each responsible for one half of the marital credit card debt. As provided in Section E(5) of Exhibit A to the Separation Agreement, Ms. Clifford was authorized to refinance the Milton Property in order to consolidate the first and second mortgages, the marital credit card debt and a bank loan. After such refinancing, Livingston would be required to pay the principal and interest reflective of the first mortgage debt, one half of the second mortgage debt and one half of the credit card debt. Accordingly, Livingston's monthly payment would likely rise after the refinancing.

[8] See certified copy of the Judgment dated January 31, 2000 attached as part of Exhibit 3 to the Netburn Aff.

[9] See certified copy of the Order dated August 24, 2000 attached as part of Exhibit 3 to the Netburn Aff.

[10] See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff.

rights against Livingston in the divorce proceedings.[11]  The Probate Court again found Livingston in contempt on May 24, 2001, and authorized Ms. Clifford to refinance and consolidate first mortgage, second mortgage and other marital debts without Livingston's signature.[12]

Ms. Clifford did not reapply for refinancing through the Credit Union, but rather refinanced the Milton Property with Chittenden Trust Co. d/b/a Mortgage Service Center ("Chittenden") on July 27, 2001 (the "July 27, 2001 Refinancing").[13]  Attorney Victoria Schepps, the closing attorney for the July 27, 2001 Refinancing representing Chittenden, requested a mortgage payoff computation of the Credit Union Mortgage.  In the ordinary course of business and as required by Massachusetts law, the Credit Union calculated and forwarded the mortgage payoff to Attorney Schepps on July 26, 2001.[14]  Coincidently, Livingston was discharged from bankruptcy on July 26, 2001.[15]  The Credit Union received a full payoff of the Credit Union Mortgage as a result of the July 27, 2001 Refinancing, and executed a discharge of the Credit Union Mortgage on August 24, 2001.[16]

---

[11]  See certified copy of Order dated April 24, 2001 attached as Exhibit 5 to the Netburn Aff.

[12]  See certified copy of Judgment of Contempt dated May 24, 2001 attached as part of Exhibit 3 to the Netburn Aff.

[13]  See certified copy of the mortgage to Chittenden Trust Co. d/b/a Mortgage Service Center attached as Exhibit 6 to the Netburn Aff.

[14]  See Mortgage Payoff Inquiry, a copy of which was produced by Livingston in the course of this litigation, attached as Exhibit 8 to the Netburn Aff.

[15]  See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff.

[16]  See certified copy of the mortgage discharge regarding the Credit Union Mortgage attached as Exhibit 9 to the Netburn Aff.

**ARGUMENT**

**I.   STANDARDS FOR CONSIDERATION OF MOTION TO AMEND**

Although Fed. R. Civ. P. 15(a) provides that leave to amend a complaint should be freely given, "a court may deny a motion to amend when the amended pleading could be defeated by a motion for summary judgment or a motion to dismiss, thereby rendering the amended complaint futile."  Delano v. Roche, 391 F. Supp.2d 79, 83-4 (D.D.C. 2005).  See Bauchman v. West High School, 132 F.3d 542, 562 (10th Cir. 1997); and Wilson v. American Tran Air, Inc., 874 F.2d 386, 391-2 (7th Cir. 1989).

**II.   LIVINGSTON'S MOTION TO AMEND IS UNTIMELY, AND SHOULD BE DENIED ON THE BASIS OF UNDUE DELAY AND PREJUDICE TO THE CREDIT UNION.**

After a responsive pleading is served, a plaintiff may amend his complaint only by leave of court, which "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "Among the adequate reasons for denying leave to amend are 'undue delay' in filing the motion and 'undue prejudice to the opposing party by virtue of allowance of the amendment.'"  Acosta-Mestre v. Hilton International of Puerto Rico, 156 F.3d 49, 51 (1st Cir. 1998)(affirming denial of motion for leave to amend complaint on the basis of undue delay where motion was filed 15 months after complaint).  See also Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995)(affirming denial of motion for leave to amend complaint on the basis of undue delay where motion was filed 14 months after complaint); Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983)(affirming denial of motion for leave to amend complaint on the basis of undue delay when motion was filed 17 months after complaint);  Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15, 19-20 (1st Cir 1979)(affirming denial of motion for leave to amend on the basis of undue delay where motion was filed 29 months after

complaint and in response to motion for judgment on the pleadings).  The burden is on the plaintiff to show "some valid reason for his neglect and delay," when seeking leave to amend when a considerable period of time has passed since the filing of the complaint.  <u>Grant</u> 55 F.3d at 6; <u>Stepanischen</u>, 722 F.2d at 933; and <u>Hayes</u>, 602 F.2d at 19-20.  Furthermore, when a motion for leave to amend the complaint is filed after the defendant has moved for summary judgment, the plaintiff must show that the proposed amendment has "substantial merit" and is supported by "substantial and convincing evidence."  <u>Resolution Trust Corp. v. Gold</u>, 30 F.3d 251, 252 (1st Cir. 1994); and <u>Torres-Matos v. St. Lawrence Garment Co.</u>, inc. 901 F.2d 1144, 1146 (1st Cir. 1990).

In the present case, the original Complaint was filed on June 27, 2006.  An Amended Complaint was filed on December 27, 2005.  At the Scheduling Conference held on April 26, 2006, the Court limited discovery in anticipation of a motion for summary judgment that the Credit Union was required to file by July 17, 2006.  The Credit Union filed a motion for summary judgment and supporting materials electronically at approximately 1:00 PM on July 14, 2006.  At approximately 2:30 PM on July 14, 2006, Livingston filed his motion to amend with the Court in paper form.

Livingston has offered no explanation for his delay in filing the motion to amend other than inadvertence.  Under the circumstances, Livingston has not met his burden to show "some valid reason for his neglect and delay."  Furthermore, Livingston's motion was filed after the Credit Union filed its motion for summary judgment, and Livingston has failed to show that his proposed amendment has "substantial merit" and is supported by "substantial and convincing evidence."

Accordingly, Livingston's motion is untimely and should be denied on the basis of undue delay and prejudice to the Credit Union.

### III. LIVINGSTON'S PROPOSED AMENDMENT IS FUTILE BECAUSE THE BANKRUPTCY COURT LIFTED THE AUTOMATIC STAY PRIOR TO THE JULY 27, 2001 REFINANCING.

"The automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors. As its name suggests, the stay springs into effect upon the filing of a bankruptcy petition." In Re: Jamo, 283 F.3d 392, 398 (1st Cir. 2002). Among the actions prohibited by the automatic stay is "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The Automatic Stay "remains in force until a federal court either disposes of the case, *see* 11 U.S.C. § 362(c)(2), or lifts the stay, *see id.* § 362(d)-(f)." In Re: Soares, 107 F.3d 969, 975 (1st Cir. 1997).

In the present case, Livingston enjoyed the benefit of the Automatic Stay upon filing the Voluntary Petition for Chapter 13 bankruptcy on March 7, 2001. See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff. However, on April 24, 2001, Ms. Clifford was granted relief from the Automatic Stay of proceedings by the Bankruptcy Court, which specifically ordered that:

> the Automatic Stay in the above-Bankruptcy proceeding is vacated and extinguished for all purposes as to [Ms. Clifford], her assignees and/or successors in interest, and [Ms. Clifford] may proceed to assert her rights against [Livingston] within the divorce proceeding between [Livingston] and [Ms. Clifford] and more fully described in Livingston v. Livingston, Norfolk County Probate and Family Court, Docket No. 97D1237-D1 by any means necessary, all pursuant to applicable state and federal law.

See certified copy of Order dated April 24, 2001 attached as Exhibit 5 to the Netburn Aff. Thereafter, the Probate Court again found Livingston in contempt on May 24, 2001, and

authorized Ms. Clifford to refinance and consolidate first mortgage, second mortgage and other marital debts without Livingston's signature. See certified copy of Judgment of Contempt dated May 24, 2001 attached as part of Exhibit 3 to the Netburn Aff.

Livingston's proposed Amended Complaint asserting a claim against the Credit Union for violation of the Automatic Stay by accepting a payoff of the Credit Union Mortgage as part of the July 27, 2001 Refinancing is futile, because the Automatic Stay was vacated and extinguished with respect to the July 27, 2001 Refinancing. Livingston's motion to amend should be denied.

**IV.    LIVINGSTON'S PROPOSED AMENDMENT IS FUTILE BECAUSE LIVINGSTON WAS DISCHARGED FROM BANKRUPTCY PRIOR TO THE JULY 27, 2001 REFINANCING.**

Again, the Automatic Stay "remains in force until a federal court either disposes of the case, see 11 U.S.C. § 362(c)(2), or lifts the stay, see id. § 362(d)-(f)." In Re: Soares, 107 F.3d 969, 975 (1st Cir. 1997). As provided by 11 U.S.C. § 362(c)(2), the Automatic Stay:

> continues to the earliest of - -
> (A) the time the case is closed;
> (B) the time the case is dismissed; or
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied…

On April 4, 2001, Livingston's bankruptcy case was converted from Chapter 13 to Chapter 7. See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff. After vacating the automatic stay for all purposes as to Ms. Clifford on April 24, 2001, the Bankruptcy Court discharged Livingston from bankruptcy on July 26, 2001. See certified copy of the docket for the bankruptcy case attached as Exhibit 4 to the Netburn Aff. As such, the Automatic Stay was not in effect at the time of the July 27, 2001 Refinancing.

Livingston's proposed Amended Complaint asserting a claim against the Credit Union for violation of the Automatic Stay by accepting a payoff of the Credit Union Mortgage as part of the July 27, 2001 Refinancing is futile, because Livingston was discharged from bankruptcy prior to the July 27, 2001 Refinancing. Livingston's motion to amend should be denied.

### V.     AN ACTION FOR VIOLATION OF THE AUTOMATIC STAY SHOULD BE BROUGHT BEFORE THE BANKRUPTCY COURT.

As stated in Pereira v. First North American National Bank, 223 B.R. 28, 31 (N.D. Ga. 1998), "any action for violation of the automatic stay, an action arising or relating to a Title 11 case, should be brought before the proper forum, the …bankruptcy court that issued the automatic stay...."

Livingston's motion to amend should be denied because the proposed claim against the Credit Union for violation of the Automatic Stay should be brought before the Bankruptcy Court.

### CONCLUSION

For the foregoing reasons, Defendant MBTA Employees Credit Union respectfully requests that this Honorable Court deny Plaintiff's motion to amend the Amended Complaint.

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 26, 2006.

/s/ Eric C. Hipp
Eric C. Hipp

**MBTA EMPLOYEES CREDIT UNION**,
By its attorneys,

/s/ Peter C. Netburn
Peter C. Netburn, BBO No. 546935
Eric C. Hipp, BBO No. 642658
HERMES, NETBURN, O'CONNOR
   & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA  02110-3113
(617) 728-0050 – Tel.
(617) 728-0052 – Fax

Dated:  July 26, 2006

G:\DOCS\ECH\Clients\CUMIS\MBTA ECU - Livingston\Pleadings\Opposition to Plaintiff's Motion to Amend Complaint.doc