UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| **RICHARD LIVINGSTON,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-CV-11349-RCL |
| **MBTA EMPLOYEES CREDIT UNION,** | ) |
| Defendant. | ) |

**DEFENDANT MBTA EMPLOYEES CREDIT UNION'S
REPLY TO PLAINTIFF'S OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**LEAVE TO FILE GRANTED ON SEPTEMBER 18, 2006**

With leave of Court, Defendant MBTA Employees Credit Union (the "Credit Union") hereby submits this Reply to *Pro Se* Plaintiff Richard Livingston's ("Livingston" or "Plaintiff") Opposition to the Credit Union's Motion for Summary Judgment. This Reply is will attempt to clarify and respond to Livingston's diffuse, unfocused, unsupported and incognizable arguments. The Credit Union is entitled to summary judgment in its favor as to all counts of Livingston's Amended Complaint.[1]

---

[1] The first two and a half pages of Livingston's eight page "Argument" addresses his claim for violation of the automatic stay provision of the U.S. Bankruptcy Code, which was the subject of his Motion to Amend the Amended Complaint filed on July 14, 2006, a few hours after the Credit Union filed its Motion for Summary Judgment. In its Opposition to the Motion to Amend, the Credit Union argued that the Motion was untimely and should be denied on the basis of futility because: (1) the automatic stay was vacated and extinguished with respect to the July 27, 2001 Refinancing by Order of the Bankruptcy Court; and (2) Livingston was discharged from bankruptcy on July 26, 2001, the day before the July 27, 2001 Refinancing. The Court has not ruled upon Livingston's Motion to Amend.

### I. Livingston's "Violations of Privacy Claims"

In its Motion for Summary Judgment, the Credit Union argued that: (1) the alleged disclosures of information by the Credit Union fail to evidence "Violations of Privacy" or any other wrongful conduct; (2) Livingston's "Right to Privacy Law" claim is barred by the applicable three (3) year statute of limitations; (3) Livingston's Federal Trade Commission Act claim fails because the law does not provide a private cause of action; (4) Livingston's Financial Privacy Act claim is barred by the applicable three (3) year statute of limitations; and (5) Livingston's claim under "Article 8" of the Credit Union's "Policy Manual" fails to state a claim.

With respect to the Credit Union's first argument, Livingston did not address the point that Ms. Clifford was a member of the Credit Union and a co-borrower on the Credit Union Mortgage and that as such, the alleged the disclosure of information by the Credit Union on her behalf (*i.e.*, a mortgage payoff figure and appraisal of the Milton Property to Chittenden Bank) was not wrongful. Likewise, Livingston did not address the point that the July 27, 2001 Refinancing was authorized by and conducted in accordance with the Orders of the Bankruptcy Court and Norfolk County Probate and Family Court. Rather, without any legal basis, Livingston argues that the Credit Union was required to seek relief from the automatic stay provision of the bankruptcy code, notwithstanding the Bankruptcy Court's Order of April 24, 2001 that:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Automatic Stay in [Livingston's] Bankruptcy proceeding is vacated and extinguished for all purposes as to [Ms. Clifford], her assignees and/or successors in interest, and [Ms. Clifford] may proceed to assert her rights against [Livingston] within the divorce proceeding between [Livingston] and Clifford ….

See Exhibit 5 to the July 14, 2006 Affidavit of Peter C. Netburn ("Netburn Aff."), which was filed in support of the Credit Union's Motion for Summary Judgment on July 14, 2006.

Furthermore, Livingston implies that the automatic stay remained in effect at the time of the July 27, 2001 Refinancing because his bankruptcy was not "certified as discharged until July 28, 2001" and the final report of the trustee was not filed until January 10, 2002, even though he was discharged from bankruptcy on July 26, 2001.  Livingston offers no legal support for the proposition that the automatic stay remains in effect until the Trustee's report is filed, and his contention that his discharge was not "certified" until July 28, 2001 is simply wrong.  <u>See</u> Exhibit 4 to the Netburn Aff.  The Bankruptcy Court docket shows plainly that the Order discharging Livingston was entered on July 26, 2001.[2]  The fact the Discharge Order was not mailed until a few days later is of no consequence.  Accordingly, Livingston's "violations of privacy" claims fail as a matter of law and summary judgment should be granted in the Credit Union's favor.

With respect to the Credit Union's second and fourth arguments, Livingston did not address the point that the applicable three (3) year statutes of limitation bar his claims under the Massachusetts Right to Privacy Law and Federal Right to Financial Privacy Act.  These claims fail as a matter of law and summary judgment should be granted in the Credit Union's favor.

With respect to the Credit Union's third argument, Livingston correctly argues that a violation of the Federal Trade Commission Act would be a violation of M.G.L. c.93A.  However, Livingston implicitly acknowledges that he cannot maintain a separate cause of action for violation of the FTC Act because that statute does not provide a private right of action.  This claim fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

---

[2]  Livingston attached a copy of the Discharge Order as Exhibit 5 to his Affidavit.  The Order is dated July 26, 2001.  The third page of the exhibit appears to be a Certificate of Service, which indicates that the Discharge Order was mailed on July 28, 2001.

With respect to the Credit Union's fifth argument, Livingston does not address the point that the document upon which he relies as the basis for his claim, the Credit Union's "Terms and Conditions of Electronic Funds Transfer" is irrelevant to the alleged disclosures of information (*i.e.*, a mortgage payoff figure and appraisal of the Milton Property) by the Credit Union to Chittenden Bank. See copy attached to Livingston's Affidavit as Exhibit 17. Livingston's attempt to characterize this document as the Credit Union's "Policy Manual" and/or "Employee Rights and Responsibility Policy Manual," does not change the document's irrelevance. This claim fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

**II.     Livingston's Claims for Violations of Section 525(a) of the Bankruptcy Code**

In its Motion for Summary Judgment, the Credit Union argued that the Credit Union By-Law prohibiting Livingston from running in the election for the Credit Union's Board of Directors did not violate 11 U.S.C. § 525(a), because that statute only applies to "governmental units." The By-Law also did not violate 11 U.S.C. § 525(b), because although the statute applies to private employers, it does not apply to "refusal to hire claims."

Livingston does not address the Credit Union's argument regarding Section 525(b). With respect to his claim under Section 525(a), Livingston cites a U.S. Senate report (S. Rep. No. 989, 95th Cong., 2nd Sess. (1974)) for the proposition that the law prohibits discrimination against bankruptcy debtors "by organizations that can seriously affect the debtor's livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union." The quoted language is accurate, but taken out of context. As explained in S. Rep. No. 989, 81 (1974), Section 525 codified:

> the result of <u>Perez v. Campbell</u>, 402 U.S. 637 (1971), which held that a state would frustrate the congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.

The Senate paraphrased the new law, which only included the language now found in subsection (a) [subsection (b) was not added until 1994], and explained:

> In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez Rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a state bar association or a medical society, or by other organizations that can seriously affect the debtor's livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union. … This section is not so broad as a comparable section proposed by the Bankruptcy Commission [citation omitted], which would have extended the prohibition to any discrimination, even by private parties. Nevertheless, it is not limiting either, as noted. The courts will continue to mark the contours of the antidiscrimination provision in pursuit of sound bankruptcy policy.

Read in proper context, the language quoted by Livingston does not support his claim under Section 525(a). First, the Senate Report does not bear the force of law. Rather, the unambiguous language of the statute applies only to "governmental units." The invitation for courts to expand the "Perez Rule," is also tempered by the enactment of subsection (b) in 1994. Courts interpreting subsection (b), which applies to private employers, have held that it does not apply to "refusal to hire claims" against a private employer. Even assuming that the language in the Senate Report did carry the force of law, the Credit Union is not a "governmental or quasi-governmental organizations that perform licensing functions" or an "organization that can seriously affect the debtor's livelihood or fresh start." Neither Livingston's employment nor his membership at the Credit Union was affected. Rather, Livingston was simply precluded from running in the election for an unpaid position on the Credit Union's Board of Directors.

Livingston's claim for violations of the Bankruptcy Code fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

### III.    Livingston's Claim for Defamation

In its Motion for Summary Judgment, the Credit Union argued that Livingston failed to state a claim for defamation because he has failed to identify:  (1) the allegedly defamatory statement; (2) whether such statement was made orally or in writing; (3) the person that made the defamatory statement; or (4) to whom the defamatory statement was made.

In his opposition, Livingston's only reference to his defamation claim was the statement: "[t]he Defendant, MBTA Employees Credit Union is correct in that libel and slander may be founded on defamation, but the right of action itself is libel or slander."  Livingston's claim for defamation fails as a matter of law and summary judgment should be granted in the Credit Union's favor.

### IV.    Livingston's M.G.L. c.93A Claim

In its Motion for Summary Judgment, the Credit Union argued that:  (1) Livingston failed to mail or deliver the requisite demand letter under Chapter 93A, § 9 before filing suit; and (2) none of the Credit Union's alleged conduct was unfair or deceptive.

In opposition, Livingston argues the Credit Union waived this issue by failing to state it in its Answer, in the Joint Statement, or at the Scheduling Conference.  To the contrary, the Credit Union did preserve this issue in the Eleventh Affirmative Defense in its Answer to the Amended Complaint:

> [t]he Plaintiff is barred from asserting claims pursuant to M.G.L. Chapter 93A because he has failed to meet the jurisdictional prerequisites thereof and, in particular, he has failed to serve a written demand for relief as required by M.G.L. Chapter 93A.

Livingston also argues that that his former counsel, William Gately, sent the requisite Chapter 93A Demand Letter to the Credit Union, attaching a copy of the alleged letter as Exhibit 23 to his Affidavit.[3]  However, Livingston has not proffered any proof establishing that the alleged letter was ever sent to or received by the Credit Union, and there is no reason to believe that Livingston himself is competent to so testify.  Rather, Livingston attacks the Credit Union's procedures for logging and tracking legal documents, and argues that the c.93A letter must have been misplaced.  This argument is without factual or legal support.[4]  Furthermore, Livingston can not dispute that Thomas J. Henry, the addressee of the alleged 93A Demand letter, stated in an affidavit that he did not receive any such letter.  See the July 11, 2006 Affidavit of Thomas J. Henry, which was filed in support of the Credit Union's motion for summary judgment on July 14, 2006.  Livingston's claim for violations M.G.L. c.93A is barred as a matter of law because he is unable to meet the jurisdictional prerequisite thereof, and summary judgment should be granted in the Credit Union's favor.

With respect to the substance of his claim, Livingston essentially alleges that the Credit Union violated Chapter 93A by:  (1) failing to seek relief from automatic stay in the Bankruptcy

---

[3]  Through a Motion to Strike filed on August 17, 2006, the Credit Union seeks to strike Exhibit 23 to Livingston's Affidavit on the grounds that it is inadmissible in its present form, because no foundation has been established that it was ever sent to or received by the Credit Union.  Livingston is unable to provide such foundation, because he does not have the requisite personal knowledge.

[4]  In support of his argument that the Credit Union's tracking of legal documents is flawed, Livingston attached as Exhibit 22 to his Affidavit a letter dated February 25, 2005 from Gary Kravetz (the Credit Union's general counsel) to Philip O'Connor (the Credit Union's CEO), in which Mr. Kravetz proposed that the Credit Union alter its handling procedures regarding legal notices.  Through a Motion to Strike filed on August 17, 2006, the Credit Union seeks to strike Exhibit 22 on the grounds that it is inadmissible hearsay and irrelevant.  This letter in no way contradicts the statement contained in Mr. Kravetz affidavit that "it is the Credit Union's usual practice to provide me with copies of all letters which purport to be written demands pursuant to M.G.L. c.93A, § 9 ('93A Demand Letter'), or similar correspondence or notices, mailed or delivered to the Credit Union" or that he did not receive the alleged 93A Demand Letter.  See the July 12, 2006 Affidavit of Gary J. Kravetz, which was filed in support of the Credit Union's motion for summary judgment on July 14, 2006.  In fact, however, nothing presented by Livingston establishes, or even raises an issue of fact, as to whether the letter was sent to or received by the Credit Union.

Court; (2) calculating and transmitting the payoff figure for the Credit Union Mortgage; and (3) "changing the original lenders name MBTA to Mortgage Service Center on the Appraisal originally constructed (bought and paid for) by the Plaintiff, Pro Se, Richard Livingston."  As explained previously, the Automatic Stay was vacated and extinguished with respect to the July 27, 2001 Refinancing, which was conducted in accordance with the Orders of the Bankruptcy Court and the Probate Court.  Likewise, the calculation and disclosure of the mortgage payoff figure on Ms. Clifford's behalf to Chittenden Bank was not wrongful.  Notwithstanding that the Credit Union did not provide an appraisal of the Milton Property to Chittenden Bank, such conduct would not have been wrongful, as it would have been done on Ms. Clifford's behalf.  Attached as Exhibit 7 to the Netburn Aff. is a copy of an appraisal of the Milton Property, which had been produced by Livingston in the course of discovery, indicating that it was prepared by Paul Falconer of Falconer Appraisal Services, Inc. for Mortgage Service Center as of January 18, 2001.  In support of his allegation that the Credit Union altered the appraisal before sending it to Chittenden Bank, Livingston attached as Exhibit 19 to his Affidavit a copy of the cover page to an appraisal of the Milton Property indicating that it was prepared by Paul Falconer of Falconer Appraisal Services, Inc. for the Credit Union as of January 18, 2001.  Notwithstanding Livingston's allegation, there is no evidence that the Credit Union altered the appraisal or transmitted it to Chittenden Bank.[5]  Livingston has not presented any evidence to indicate that

---

[5] In January, 2001, Livingston and Clifford submitted a joint application to refinance the Milton Property through the Credit Union, which was approved in February, 2006.  See ¶ 6 of the July 11, 2006 Affidavit of Thomas J. Henry ("Henry Aff."), which was filed in support of the Credit Union's Motion for Summary Judgment on July 14, 2006.  As part of the application process, Paul Falconer of Falconer Appraisal Services, Inc. performed an appraisal of the Milton Property as of January 18, 2001 for the Credit Union.  See Exhibit 19 to Livingston's Affidavit.  This refinancing was terminated when Livingston filed a bankruptcy petition on March 7, 2001.

After the Bankruptcy Court granted Ms. Clifford relief from the Automatic Stay and the Probate Court authorized Ms. Clifford to refinance without Livingston's signature, Ms. Clifford refinanced the Milton Property with

Footnote continued on the next page.

anyone other than Mr. Falconer changed the appraisal report and sent it to Chittenden Bank (d/b/a Mortgage Service Center).  Livingston's claim for violations M.G.L. c.93A fail as a matter of law and summary judgment should be granted in the Credit Union's favor.

## CONCLUSION

For the foregoing reasons, Defendant MBTA Employees Credit Union respectfully requests that this Honorable Court grant its motion for summary judgment.

|  |  |
|---|---|
|  | **MBTA EMPLOYEES CREDIT UNION**, By its attorneys, |
|  | /s/ Peter C. Netburn |
|  | Peter C. Netburn, BBO No. 546935 |
|  | Eric C. Hipp, BBO No. 642658 |
|  | HERMES, NETBURN, O'CONNOR |
|  |     & SPEARING, P.C. |
|  | 265 Franklin Street, Seventh Floor |
|  | Boston, MA  02110-3113 |
|  | (617) 728-0050 – Tel. |
| Dated:  September 18, 2006 | (617) 728-0052 – Fax |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 18, 2006.

/s/ Eric C. Hipp
Eric C. Hipp

G:\DOCS\ECH\Clients\CUMIS\MBTA ECU - Livingston\Pleadings\MSJ\Reply to Plaintiff's Opposition to Motion for Summary Judgemnt.doc

---

Chittenden Trust Co. d/b/a Mortgage Service Center ("Chittenden Bank") on July 27, 2001.  See Exhibit 6 to the Netburn Aff.  It appears that the Milton Property was not re-appraised as part of Chittenden Bank's application process.  Satisfied with the results of the January 18, 2001 appraisal, Chittenden Bank apparently obtained a copy of the January 18, 2001 from Mr. Falconer, who noted on a new cover page that it was prepared for Chittenden Bank.  See Exhibit 7 to the Netburn Aff.  There is no evidence that the Credit Union sent a copy of the appraisal to Chittenden Bank, or that the Credit Union altered the original appraisal in any way.