UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
RICHARD LIVINGSTON                  )
           Plaintiff,               )
                                    )
     v.                             )      CIVIL ACTION NO. 05-11349-RCL
                                    )
MBTA EMPLOYEES CREDIT UNION         )
           Defendant.               )
_____)

## MEMORANDUM AND ORDER ON DEFENDANT MBTA EMPLOYEES CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT

LINDSAY, District Judge.

Before me is a motion for summary judgment on the complaint of pro se plaintiff Richard Livingston. The complaint alleges violations of Mass. Gen. L. ch. 93A ("chapter 93A"), the United States Bankruptcy Code, and "privacy rights," by the defendant, MBTA Employees Credit Union, in connection with the refinancing, by the plaintiff's former wife, of certain mortgages on their jointly owned former home, and with the defendant's rejection of the plaintiff's nomination papers as a candidate for election to the defendant's board of directors. Also before me is a motion by the plaintiff to amend his complaint and a motion by the defendant to strike portions of the plaintiff's affidavit, which accompanied his opposition to the defendant's motion for summary judgment. For the reasons stated herein, I GRANT the defendant's motion for summary judgment, rendering moot the two remaining motions.

1. <u>Background</u>.[1]

In 1993, the plaintiff and his former spouse, Margaret Clifford ("Clifford"), acquired by deed certain real estate located in Milton, Massachusetts. In April, 1994, the plaintiff and Clifford granted a mortgage on that property to the defendant (the "Credit Union mortgage"). In December, 1998, the plaintiff and Clifford were granted a divorce by the Norfolk Probate and Family Court. The divorce decree authorized Clifford to refinance the Credit Union mortgage for the purposes of consolidating into a single loan first and second mortgages on the Milton real estate, certain outstanding credit card debt, and a separate bank loan. Clifford applied for the refinancing in 1999, but the plaintiff, who as noted above, was a co-grantor of the Credit Union mortgage, failed at least twice to appear for the closing of the refinancing transaction.[2] The Probate Court found him in contempt for his failure to appear and appointed a special master to act on his behalf should he again refuse to cooperate in the refinancing.

In January 2001, the plaintiff and Clifford applied to refinance the property with the defendant. Their application was approved, and the closing was scheduled for March 19, 2001. On March 7, 2001, the plaintiff filed a voluntary petition for Chapter 13 bankruptcy, which was subsequently converted to a Chapter 7 bankruptcy. As a result of the filing, any act to collect, assess, or recover a claim against the plaintiff that arose before commencement of the bankruptcy proceeding was prohibited by an automatic stay, "one of the fundamental protections that the

---

[1] Unless otherwise noted, the facts as recited here are taken from the submissions of the parties, are undisputed, and have been viewed in the light most favorable to the plaintiff. *See Bienkowski v. Northeastern University*, 285 F.3d 138, 140 (1st Cir. 2002).

[2] The plaintiff asserts that he was not notified of these closings, but the Probate Court found expressly that his statements to that effect were not credible.

Bankruptcy Code affords to debtors." *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002); *see* 11 U.S.C. § 362(a)(6).  Once in effect, an automatic stay remains in force until a federal court either disposes of the case or lifts the stay.  *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997).  The automatic stay thus precluded the refinancing contemplated by the January 2001 application.

Clifford moved for relief from the stay and, after a hearing, the bankruptcy court granted that relief.  Specifically, the bankruptcy court ordered the automatic stay "vacated and extinguished for all purposes as to [Clifford], her assignees and/or successors in interest," and permitted her to assert her rights against the plaintiff within the divorce decree by "any means necessary, all pursuant to applicable state and federal law."  Noting that relief had been granted from the automatic stay, the Probate Court then authorized Clifford to refinance the property without the plaintiff's signature.[3]

Clifford proceeded to refinance the property through Chittenden Trust Co. d/b/a Mortgage Service Center ("Chittenden").  The parties dispute whether an appraisal of the property prepared for this refinancing was undertaken at the request of Chittenden or at the request of the defendant.  For purposes of this motion I will assume that the plaintiff is correct, and that the appraisal was prepared at the request of the defendant.[4]  As part of the refinancing

---

[3] The plaintiff asserts that the Probate Court's order that he "shall not be required to sign any documents in connection with wife's effort to refinance the outstanding mortgages and existing marital debt," meant that Clifford could not refinance the property without his signature, and that the court would not require his signature.  As is evident from the order, which specifically provided that Clifford "shall have the right to refinance . . . if she so elects," the plaintiffs' interpretation is flatly wrong.  Furthermore, the plaintiff's claim that he never received notice that the application for the mortgage was approved is contradicted by the explicit findings of the Probate Court.

[4] The defendant has submitted, with its affidavit, a certified copy of an appraisal that appears to have been prepared for Chittenden; the plaintiff has submitted an identical appraisal, uncertified, which appears to have been prepared for the defendant.

transaction the defendant responded to the closing attorney's request for a mortgage payoff computation by forwarding the relevant information on July 26, 2001.  Also on July 26, the plaintiff was discharged from bankruptcy.  The defendant received a full payoff of the Credit Union mortgage the following day and executed a discharge of the mortgage on August 24, 2001.[5]

After unsuccessfully seeking interlocutory relief regarding his divorce litigation, emergency relief in the bankruptcy court, and damages from the attorney who conducted the closing in 2001, the plaintiff submitted nomination papers to run for the defendant's board of directors in the April, 2005 election.  The defendant's election committee refused to approve the plaintiff's candidacy in accordance with the defendant's by-laws, because the plaintiff had filed for bankruptcy within the previous five years.  The plaintiff brought suit in a Massachusetts Superior Court to enjoin the election.  His request for a temporary restraining order was denied and the case was dismissed.  He then filed the instant action.

2. Discussion.

As a preliminary matter, the defendant has moved to strike certain portions of the affidavit submitted by the plaintiff in opposition to the defendant's motion for summary judgment, asserting that several exhibits attached to the affidavit do not meet the requirements of Rule 56.  Affidavits submitted in support of or in opposition to a summary judgment motion must be "made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show

---

[5] The plaintiff further alleges that the defendant failed to provide a discharge of the Credit Union mortgage.  Although it appears from the record, and the defendant concedes, that the discharge contains some errors, those errors do not appear to prevent the discharge from being effective.

affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). If affidavits refer to certain papers, sworn or certified copies of those papers are to be attached to the affidavit. *Id.* In this case, however, I need not decide as to each challenged portion of the plaintiff's affidavit whether it should be stricken, because even if I were to consider all of the materials he submitted, "there is no genuine issue as to any material fact and . . . [the defendant] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See United States v. One Parcel of Real Prop. with Bldgs.*, 960 F.2d 200, 204 (1st Cir. 1992) (A dispute is "genuine" if a reasonable jury could resolve the issue in favor of the nonmoving party and "material" if it might affect the outcome of the suit).

In count I, the plaintiff alleges that the defendant violated chapter 93A. As the defendant points out, however, the plaintiff has failed to explain how the allegations he has made in the complaint constitute unfair and deceptive business practices as prohibited by the statute.[6] *See* Mass. Gen. L. 93A § 2(a) (prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce"). It appears that the plaintiff believes that the chapter 93A violations lie in the errors the defendant made in the mortgage discharge and the fact that the defendant provided to Chittenden, at Clifford's request, financial information of the plaintiff necessary to complete the refinancing authorized by the Probate Court.[7] Even if these actions were unlawful (a matter

---

[6] The defendant asserts, by affidavit, that it never received the demand letter required before suit may be filed pursuant to chapter 93A. *See* Mass. Gen. L. ch. 93A, § 9(3). The plaintiff states that he did mail such a letter. Even if the demand letter was properly sent, the plaintiff's claim does not survive.

[7] The plaintiff further asserts that these actions constitute a violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and, consequently a violation of Mass. Gen. L. c. 93A. He also claims that the defendant transferred his personal property without his notification, consent, or written authorization, and without obtaining the required relief from the bankruptcy

5

which I need not and do not decide), the plaintiff has not proffered evidence from which a factfinder reasonably could conclude that such actions were "immoral, unethical, oppressive, or unscrupulous," *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979). *See Mechs. Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100, 109 (1979) ("not every unlawful act is automatically an unfair (or deceptive) one under" Mass. Gen. L. ch. 93A). The plaintiff thus has failed to set forth facts pertaining to the chapter 93A claim that show that the claim is trialworthy. *DePoutot v. Rafacilly,* 1124 F.3d 112, 117 (1st Cir. 2005) (the party opposing summary judgment "must demonstrate through submissions of evidentiary quality, that a trialworthy issue persists"). The plaintiff's case, as to his chapter 93A claim, is merely "a conglomeration of conclusory allegations," insufficient to forestall summary judgment. *Id.*

Count II of the complaint alleges that the defendant has violated the plaintiff's "privacy rights as defined under state and federal statutes." The plaintiff appears to believe that the defendant's transfer of his financial information to the closing attorney for Chittenden in connection with refinancing of the property by Clifford constitutes a violation of privacy rights under the Federal Trade Commission Act, 15 U.S.C. § 45 and under the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-22.[8] He also cites the defendant's "Policy Manual" as a source of a right to privacy violated by the defendant.

Clifford was a co-borrower on the loan underlying Credit Union mortgage. Thus the

---

court. These contentions are unsupported by the evidence and by the law.

[8] Although the plaintiff has not identified any Massachusetts statute allegedly violated by the defendant, any claim under the Massachusetts right to privacy law, Mass. Gen. L. ch. 214, § 1B is time-barred. *See Finney v. Madico, Inc.*, 42 Mass. App. Ct. 46, 52 (1997) (setting forth three-year statute of limitations).

defendant's release of information required for the refinancing of the mortgage was authorized by the Probate Court, and therefore was not improper. Furthermore, because the defendant is not a governmental authority, and the plaintiff has not alleged that the defendant provided any of his financial records to a governmental authority, the plaintiff has failed to state a claim for violation of the Financial Privacy Act. *See, e.g.*, 12 U.S.C. §§ 3402, 3403 (prohibiting, except under certain circumstances not relevant here unauthorized release by a financial institution of customer's financial records to a government authority). Finally, the section of the defendant's "Policy Manual" referenced by the plaintiff governs the confidentiality of electronic funds transfers and does not provide the plaintiff with a reasonable expectation of privacy in records pertaining to a mortgage on which he was a co-borrower. *See Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 n.8 (2000) (even where university handbook may be viewed as contract between student and university, right to privacy described in one section does not apply to separate section governing a different set of circumstances). Moreover, the plaintiff has not shown that any provision of the "Policy Manual" provides him with a private right of action against the defendant.

As to count III, the plaintiff alleges that the defendant enforced against him its policy prohibiting election to the board of directors of an individual who has filed for bankruptcy within the preceding five years. In so doing, the plaintiff claims that the defendant has violated at least the spirit of Section 525(a) of the United States Bankruptcy Code,[9] and discriminated against him,

---

[9] Although it is unclear from the record why the plaintiff's complaint concerning the election, filed in an attempt to prevent the Credit Union's election from going forward, was dismissed by the Superior Court. To the extent that the plaintiff asks this court to review the state court's entry of judgment against him, such a request may well be precluded by the Rooker-Feldman doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (lower federal court has no authority to review final judgment of state court); *Rooker v. Fidelity Trust*, 263 U.S. 413, 415 (1923) (state court judgment is effective and conclusive

causing him "irreparable harm with the personal and confidential matter exposed publicly in a manner to coerce, intimidate and defame in an effort to force him to withdraw his name." The provision of the Bankruptcy Code to which the defendant refers does not apply to the defendant, because it prohibits only certain actions by a governmental unit. *See* 11 U.S.C. § 525(a).[10]

To the extent the plaintiff claims that he was defamed by release of false information to certain members and officers of the defendant in connection with his application for nomination to the board of directors, the claim fails. The record supports the defendant's assertion that the information released –the fact of the plaintiff's bankruptcy filing – is true, and the plaintiff has failed to identify any other information allegedly released that was false and caused damage to him. *Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003). ("Defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and caused damage to the plaintiff.").[11]

I need not decide the plaintiff's motion to amend his complaint to add claims that the defendant violated the automatic stay provisions of the United States Bankruptcy Code, because that amendment would be futile. *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 792 (1st

---

adjudication).

[10] Furthermore, denial of the opportunity to run in an election for an unpaid position on a board of directors is not prohibited by 11 U.S.C. § 525(a) (prohibiting certain actions by a governmental unit) or by 11 U.S.C. § 525(b) (prohibiting discrimination in employment by private employers).

[11] Even if the plaintiff had adequately stated a claim for defamation supported by the record, "Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest," *Bratt v. Int'l Bus. Machs. Corp.*, 392 Mass. 508, 512-13 (1984). In this case, ensuring members of a credit union that those who govern its business activities are financially stable would appear to be such a legitimate business interest.

Cir. 1995) (although motions to amend should generally be freely given, "a court has discretion to deny them if it believes that, as a matter of law, amendment would be futile"). As noted above, the bankruptcy court vacated the stay insofar as it precluded Clifford from pursuing her claims in the then pending divorce action. Furthermore, even if the automatic stay had not been lifted, under 11 U.S.C. § 362(c)(2), an automatic stay granted in a Chapter 7 bankruptcy case continues until the occurrence of the earliest of three events including "the time a discharge is granted or denied." The plaintiff was discharged from bankruptcy on July 26, 2001, the day before the refinancing occurred.

    3. <u>Conclusion</u>.

The defendant MBTA Employees Credit Union's motion for summary judgment is GRANTED, rendering moot the defendant's motion to strike and the plaintiff's motion to amend his amended complaint. The clerk shall enter judgment for the defendant dismissing this action. SO ORDERED.

      /s/ REGINALD C. LINDSAY

      United States District Judge

DATED: February 7, 2007